## Case No. 7,393.

JOHNSON v. LAFLIN et al.

[5 Dill. 65; 17 Alb. Law J. 117, 146; 1 Thomp. Nat. Bank Cas. 331; 6 N. Y. Wkly. Dig. 181; 6 Cent. Law J. 124; 25 Pittsb. Leg. J. 119.] [1]

Circuit Court, E. D. Missouri. Feb. 8, 1878.[2]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 17 Alb. Law J. 117, 6 N. Y. Wkly. Dig. 181, and 25 Pittsb. Leg. J. 119, contain only partial reports.]

[2] [Affirmed in 103 U. S. 800.]

Henderson & Shields, for plaintiff.
A. W. Slayback, for defendant.

DILLON, Circuit Judge. The plaintiff is the receiver of the National Bank of the State of Missouri, appointed by the comptroller of the currency June 23d, 1877, the bank having suspended payment three days before. Rev. St. § 5234. The defendant Laflin had for some years prior to May 16th, 1877, been the holder of eighty-five full-paid shares in that bank. At the date of the suspension of the bank the defendant, James H. Britton, was its president, and had been such for years prior to that event. On the 16th day of May, 1877, Laflin sold, through one Keleher, a broker, the eighty-five shares of stock to Britton, and delivered to him the share certificates. duly assigned in blank, with powers of attorney in blank thereon endorsed to transfer the shares on the books of the bank. Laflin's broker, who effected the sale, understood that he sold to Britton individually, or to some unknown person for whom Britton acted, and he received in payment for the shares the personal check of Mr. Britton on the bank for $5,037.50, which was immediately presented and paid. Laflin did not know until some time after the transaction who had become the purchaser of his shares. After the shares had been thus delivered and paid for by Britton's check, and the money received, but on the same day, they were transferred, in pursuance of Mr. Britton's directions, by Mr. Girault, the book-keeper of the bank (by virtue of the powers of attorney from Laflin), to "James H. Britton, trustee," and at the same time the book-keeper credited Britton's individual account at the bank with the amount of his check given in payment for the shares, and charged the same amount to the "sundry stocks account" on the books of the bank. On the official stock register the shares were thus made to stand in the name of "James H. Britton, trustee," without stating for whom he was trustee. On the stock ledger of the bank the transaction was entered in an account entitled "James H. Britton, trustee for the bank." Neither Laflin's agent who negotiated the sale of the shares nor Laflin himself had any actual notice of the manner in which the transfer of the stock had been registered. nor that the funds of the bank had been thus used to pay for it, nor of the entries in respect thereto on the books of the bank. But of all these facts Mr. Girault, the book-keeper of the bank. who made the entries, and who had inserted his name in Laflin's blank powers of attorney to transfer the stock. had actual knowledge at the time.

This is a bill in equity by the plaintiff. as the receiver of the bank. against Laflin and Britton, to compel Laflin to repay the $5,037.50 (the amount of Britton's check for the shares paid by the bank), and to set aside the registered transfer of the eighty-five shares on the stock transfer book of the bank. The case presents questions of grave moment concerning the rights of stockholders and creditors in national banking associations. And if the insolvency of the bank here in question is such as shall make it necessary to enforce the individual liability of the shareholders (Rev. St. § 5151),

It is important to those shareholders who made no sale of their stock to know who are shareholders with them, liable to contribute to meet "the contracts, debts, and engagements of the association." These questions principally depend upon the true construction of certain provisions in the national banking act, to which we shall refer as we proceed.

Inasmuch as this act in express terms prohibits a national bank from thus becoming a "purchaser of the shares of its own capital stock" (Rev. St. § 5201), if Laflin had made a contract to sell his shares to the bank, or to its president for the bank, it is plain that such a contract would have been ultra vires and illegal, both as respects creditors and other shareholders, and the transaction could have been impeached by the bank in its corporate capacity, or by its other shareholders, even if the bank were still solvent and going on, or by the receiver as the officer appointed to wind up its affairs. In re London, etc., Exchange Bank, 5 Ch. App. 444, 452; Great Eastern Ry. Co. v. Turner, 8 Ch. App. 149; Currier v. Lebanon Slate Co., 56 N. H. 262. And although Laflin did not contract to sell his shares directly to the bank, or to the president for the bank, still, if, before the transaction was completed as to him, he had notice, actual or constructive, that the purchase was, in fact, a purchase for the bank, and paid for by the money of the bank, the transaction cannot stand, and the receiver may compel him to pay back the money thus received, and have him declared still to be a shareholder.

It would be easy to support these propositions by argument and by the authority of adjudged cases, but they are so plain that it is not necessary to do so. But Laflin, or his agent, Keleher, did not deal with the bank, or with the president, with knowledge that the latter in fact intended to pay for the shares out of the moneys of the bank. Laflin was acting in good faith. Neither he nor his agent, Keleher, had any actual knowledge of Britton's purpose to turn these shares over to the bank, and to pay for them out of the funds of the bank. If Laflin can be charged with notice, it must be constructive notice, arising either, first, from the mere fact that he was a shareholder in the bank, or, second, from the law imputing to him all the knowledge in this behalf which was possessed at the time by Mr. Girault, the book-keeper, who made the transfer of the shares on the transfer book of the bank under Laflin's blank powers of attorney, and who contemporaneously made the entries on the private books of the bank, which showed that Britton had been paid for the shares out of the general funds of the bank, and had acknowledged that he held the shares as the trustee of the bank.

The controlling question in the case is whether Mr. Laflin is affected with constructive notice in one or the other of these modes. The solution of this question, in its turn, depends upon the nature and extent of the right of a shareholder in a national banking association to transfer his shares, and also upon the elements or requisites of a completed transfer, by which is meant such a transfer as shall release the transferrer from liability to the bank, its stockholders, and creditors.

In considering these questions, our first proposition is that, under the national banking act, a shareholder has the unrestricted right to make an out-and-out bona fide and valid sale and transfer of his shares to any person or corporation capable in law of taking and holding the same, and of assuming the transferrer's liability in respect thereto.

The right to transfer shares in a corporation is usually recognized or given in express terms in the charter or constituent act, which also, not unfrequently, prescribes the manner in which the transfer shall be made. The capital stock of a corporation is invariably divided into shares of a fixed amount, for the purpose, among others, of allowing it to be readily transferred. In an ordinary partnership the consent of all the partners to the admission or retirement of a member is necessary, and every such change involves the dissolution of the old and the formation of a new partnership. But in incorporated companies this is different. Indeed, it is one of the leading objects of an incorporated body to avoid the operation and effect of this doctrine of the law of partnership. Accordingly, in this country shares in corporations are universally bought and sold without reference to the consent of the other shareholders.

The restrictions on the right bona fide to sell and transfer shares must be found in express legislative enactments or in authorized by-laws. The national banking act (Rev. St. §. 5139), by providing that shares shall "be transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of the association," recognizes the right of the shareholder to transfer his shares. There is nothing peculiar in this provision. A similar provision is found in nearly all the incorporating acts and charters in this country. The right to transfer is given or implied in the section just referred to (Rev. St. § 5139), and that right the association cannot take away or defeat. It contemplates a transfer on the books of the association, and all that the association is authorized to do is to prescribe the manner in which the transfer shall be made on its books. There is here no limitation whatever upon the right of transfer, and none exists except such as is implied from the nature of the transaction or from other provisions of the act. Another section (Id. § 5201) prohibits the bank from dealing in its own shares. This implies a restriction

on the shareholder in selling his shares to the bank itself, or to a known trustee for the bank. And a shareholder cannot transfer his shares colorably, and thereby cease to be a shareholder as respects creditors and other shareholders who would be injured by the transfer. There may also be an implied prohibition against the right to transfer shares to an infant or person not capable in law of assuming the liabilities, as well as enjoying the rights, of the transferrer of the shares in respect thereto, but we have no occasion to determine this point. Id. § 5139; compare Id. § 5152; Weston's Case, 5 Ch. App. 614, 620. And, on general principles, there may also be an implied prohibition against the transfer of shares to a pauper or man of straw or insolvent person, for the fraudulent purpose of escaping liability—but this is a matter that need not now be considered.

Subject, however, to such prohibitions and limitations, the right of the share-owner to make an actual and bona fide sale and transfer of his shares to any person capable in law of taking and holding the same and of assuming the liabilities of the transferrer in respect thereto, is plainly deducible from the national banking act itself. But if any doubt could exist on this subject, it would be removed by the judicial decisions construing the provisions of the banking act in this regard and similar provisions in other legislative enactments.

In Bank v. Lanier, 11 Wall. [78 U. S.] 369, arising under the national banking act, it was expressly held by the supreme court of the United States that the owner of shares in a national bank may transfer the same by an assignment and delivery of the certificates, and the transferee may compel the bank to register the transfer on its books. The learned justice who delivered the opinion of the court in that case, after speaking of the additional value given to this species of property by reason of its transferable quality, says: "Whoever in good faith buys the stock and produces to the corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred," even if the transferrer is the debtor of the bank. The duty of the bank to make the transfer in such a case is held to be a corporate duty, in respect of which the bank is liable for the wrongful acts and omissions of its officers.

It was urged in the argument at the bar in the present case that the provision that the shares should "be transferable on the books of the bank" gave the directors of the bank the power to approve or disapprove of any given transfer of shares, and to register or refuse to register the same, as in their judgment the interests of the bank or of the other stockholders might require. Such, however, is not the object of this very common provision in charters and acts of incorporation. The purpose of requiring a transfer on the books of the bank is that the bank may know who are the shareholders, and as such entitled to vote, receive dividends, etc., and for the protection of bona fide purchasers of the shares, and of creditors and persons dealing with the bank. That such is the meaning of the provision in question, and that it does not restrict the right of the owner to transfer his stock or clothe the corporation with the power to refuse to register bona fide transfers, is settled beyond all question by numerous decisions in the English and the federal and state courts. Black v. Zacharie, 3 How. [44 U. S.] 483; Union Bank v. Laird, 2 Wheat. [15 U. S.] 390; Webster v. Upton, 91 U. S. 65, 71; Bank v. Lanier, 11 Wall. [78 U. S.] 369; St. Louis Perpetual Ins. Co. v. Goodfellow, 9 Mo. 149; Chouteau Spring Co. v. Harris, 20 Mo. 382; Moore v. Bank of Commerce, 52 Mo. 377; Hill v. Pine River Bank, 45 N. H. 300; In re London, etc., Telegraph Co., L. R. 9 Eq. 653.

The general subject of the right to transfer shares has been much discussed in the cases in England arising under the various companies acts. Some of these acts give the directors express power to refuse to assent to or register transfers of shares, and some do not. The result of the English cases is that the directors cannot refuse to register a bona fide transfer of stock unless the power to do so is expressly given in the act of parliament or the articles of association. The leading authority on this point is Weston's Case, 4 Ch. App. 20. See, also, Gilbert's Case, 5 Ch. App. 559. In Weston's Case, 4 Ch. App. 20, Lord Justice Page Wood, in considering this subject, said:

"I have always understood that many persons enter these companies for the very reason that they are not like ordinary partnerships, but that they are partnerships from which members can retire at once, and free themselves from responsibility at any time they please, by going into the market and disposing of and transferring their shares, without the consent of directors or shareholders, or anybody, provided only it is a bona fide transaction; by which I mean an out-and-out disposal of the property, without retaining any interest in them. But if it is desired by a company that such unlimited power of assignment shall not exist, then a clause is inserted in the articles, by which the directors have powers of rejection of members. Shortridge v. Bosanquet, 16 Beav. 84, which went to the house of lords, was a case of that kind. In the absence of any such restriction, I think it is perfectly plain that the companies act of 1862, in the twenty-second section, gives a power of transferring shares. I think there is no such power given to the shareholders, and that the shares are at once transferable under the statute, unless something is found to the contrary in the articles of association. * * * It would be a very serious thing for the shareholders in one of these companies to be told that their shares, the whole value of which consists in their being marketable and

passing freely from hand to hand, are to be subject to a clause of restriction which they do not find in the articles. And, I may add, that if we were to hold that such powers were vested in the directors, it would be a very serious thing for them, and would impose upon them much more onerous duties than any which are really imposed upon them by this clause."

In Gilbert's Case, 5 Ch. App. 559, 565, Lord Justice Giffard said: "I agree that, according to Weston's Case, and according to what I have always considered to be the law, there is no inherent power in the directors, apart from the provisions of the articles of association, to refuse to register a proper and valid transfer, if that proper and valid transfer is submitted to them."

And although there is express power to the directors to refuse to assent to or register a transfer, this power must be exercised in a reasonable manner and bona fide, and they must have some valid and lawful reason for refusing to register. Ex parte Penney, 8 Ch. App. 446; Nation's Case, L. R. 3 Eq. 77; Fyfe's Case, 4 Ch. App. 768, L. R. 9. Eq. 589; Allin's Case, L. R. 16 Eq. 449; Id. 559; Weston's Case, 5 Ch. App. 614, 620; Ex parte Elliott, 2 Ch. Div. 104. In a case where the directors had power to approve or reject the transfer of shares, one of the vice-chancellors, speaking of the right of a share-owner to dispose of his shares, said: "One of the incidents (of this class of property) is the right to transfer it—a right to make a present and complete transfer of it. It is the duty of the directors to receive and register the transfer, or to furnish some (valid and sufficient) reason for refusing to transfer." In re Stranton, etc., Co., L. R. 16 Eq. 559, per Bacon, vice-chancellor. Similar observations are made by the supreme court of the United States in Bank v. Lanier, supra. Mr. Justice Davis there said: "The power to transfer their stock is one of the most valuable franchises conferred by congress. * * * It enhances the value of the stock. Although neither in form nor character negotiable paper, they (the share certificates) approximate to it as nearly as possible."

It would be a new, and, I apprehend, a startling, doctrine to proclaim that the holder of shares in a corporation, where the only provision on the subject of transfers was one requiring them to be made on its books, had no right to make a complete and effectual disposition of them without the consent of the directors or other shareholders. No such power over the right of transfer has been given in the national banking act. Such a power is so capable of abuse, and so foreign to all received notions and the universal practice and mode of dealing in these stocks, that it cannot, in the absence of legislative expression, be held to exist.

For these reasons, and upon these authorities, the proposition must be considered as established that a share-owner in a national bank, while it is a going concern, has the absolute right, in the absence of fraud, to make a bona fide and actual sale and transfer of his shares at any time to any person capable in law of purchasing and holding the same and of assuming the transferrer's liabilities in respect thereto, and that this is right is not, in such cases, subject to the control of the directors or other stockholders.

Our second proposition is that Laflin did make a complete and effectual sale and transfer of his shares to James H. Britton individually, and that, as to Laflin, it was not a sale and transfer of the stock to the bank. Laflin sold through the broker or agent, Keleher, and the latter dealt with Britton as an individual, without knowledge that Britton intended to turn over the shares to the bank, and he received in payment for the shares the personal check of Mr. Britton, and delivered to him at the same time the certificates of stock assigned in blank, with powers of attorney in blank thereon endorsed, authorizing the transfer of the shares on the books of the bank.

As between Laflin and Britton, the transfer was complete by the sale, assignment, delivery, and payment, without registration, and this, whether it gave Britton before the registration the legal title to the shares as against Laflin, or only a complete equitable title. Union Bank v. Laird, 2 Wheat. [15 U. S.] 390; Webster v. Upton, 91 U. S. 65, 71; Black v. Zacharie, 3 How. [44 U. S.] 483; Bank v. Lanier, 11 Wall. [78 U. S.] 369, 377; Chouteau Spring Co. v. Harris, 20 Mo. 382; Moore v. Bank of Commerce, 52 Mo. 377; New York & N. H. R. Co. v. Schuyler, 34 N. Y. 80; McNeil v. Tenth Nat. Bank, 46 N. Y. 325; Grymes v. Hone, 49 N. Y. 17, 22; Bank of Utica v. Smalley, 2 Cow. 778; Bank of Commerce's Appeal, 73 Pa. St. 59; Ross v. Southwestern Railroad Co., 53 Ga. 514; Hoppin v. Buffum, 9 R. I. 513; Bank of America v. McNeil, 10 Bush. 54; Davis v. Lee, 26 Miss. 505; German Union Bldg. & Sav. Fund Ass'n v. Sendmeyer, 50 Pa. St. 67; Leavitt v. Fisher, 4 Duer, 1.

That the transaction is complete as between seller and purchaser of stock by the assignment and delivery of the certificate assigned, with the power to transfer and the receipt of payment, is fully shown by these cases, and is also evident from the fact that thereupon each of them has the legal right to have a transfer of the shares made on the books of the bank. The seller of the shares, for his protection against creditors of the bank in case of insolvency, may transfer the same on the books to the vendee, the purchase being the authority to the seller to do this. Webster v. Upton, 91 U. S. 65, 71. And, for the like reason, the seller of shares who has done all that is necessary to enable the purchaser to transfer the shares on the books, may file a bill to compel the vendee to record the transfer. Shaw v. Fisher, 2 De Gex & S. 11; Cheale v. Kenward, 3 De Gex & J.

27; Wynne v. Price, 3 De Gex & S. 310; Webster v. Upton, 91 U. S. 65, 71. So, also, the vendee of the shares, where the vendor has done all that is necessary to enable the transfer to be registered, may for his own protection compel the bank to register the transfer, or hold it liable in damages for a wrongful refusal. Bank v. Lanier, 11 Wall. [78 U. S.] 369; Hill v. Pine River Bank, 45 N. H. 300; Bank of Utica v. Smalley, 2 Cow. 778; Commercial Bank of Buffalo v. Kortright, 22 Wend. 348.

The delivery of the share certificates as signed in blank and blank transfers will entitle the bona fide vendee to have the transfer registered. "Whoever in good faith buys the stock and produces to the corporation the certificates regularly assigned, with power to transfer, is entitled to have the stock transferred" (Bank v. Lanier, 11 Wall. [78 U. S.] 369, per Davis, J.), unless there exists some valid and legal reason in favor of the bank for refusing to register the transfer, as in the case of the Union Bank v. Laird, 2 Wheat. [15 U. S.] 390. In that case the charter gave the bank a lien for the shareholder's debt to it, and provided that "stock shall be transferable only on the books of the bank." Under these circumstances the bank was held to have a lien on the shares to secure the share-owner's indebtedness to it, which was superior to the right of the unregistered transferee of the stock. Black v. Zacharie, 3 How. [44 U. S.] 483.

If the foregoing propositions are sound, Britton, as against Laflin, had the right immediately on delivery and payment to register the transfer of the shares, and had the power to fill up the blank transfers and have the transfer registered. In re Tahiti Cotton Co., L. R. 17 Eq. 273; German Union Bldg. & Sav. Fund Ass'n v. Sendmeyer, 50 Pa. St. 67; Leavitt v. Fisher, 4 Duer, 1; Commercial Bank of Buffalo v. Kortright, 22 Wend. 348. Nothing more was required to be done by Laflin or needed to enable Britton to make his title complete. And Laflin could have compelled Britton to register the transfer. If Laflin had proceeded against Britton, he could have forced him to have accepted a transfer of the stock in his own name or in the name of some person capable of taking and holding the same. Maxted v. Paine, L. R. 6 Exch. 132. It would have been no answer to Laflin for Britton to have said, "I bought this stock, not for myself, but for the bank." Laflin could have rejoined, "You purported to act for yourself; I supposed you were so acting, and you had no authority, and could have had none, to act for the bank."

It is held in England, under the companies act, that the transferrer of shares is liable to be treated as a stockholder until he transfers to one who is in law capable of holding and liable in respect of the shares, and whose purchase is registered, unless, perhaps, where the neglect to register is entirely the fault of the corporation or its officers. Fyfe's Case, 4 Ch. App. 768; Lowe's Case, L. R. 9 Eq. 589; Shropshire Union Railways & Canal Co. v. Queen, L. R. 7 H. L. 496, 513; McEuen v. West London Wharves, etc., Co., 6 Ch. App. 655; Weston's Case, 5 Ch. App. 614, 620; Gooch's Case, 8 Ch. App. 266; Gilbert's Case, 5 Ch. App. 559; Master's Case, 7 Ch. App. 292; Nickalls v. Merry, L. R. 7 H. L. 530; Symons' Case, 5 Ch. App. 298; Heritage's Case, L. R. 9 Eq. 5.

Assuming, without deciding, that this principle applies in all its force under the national banking act, if Laflin had sold to an infant, his liability would remain, notwithstanding the transfer was registered. Nickalls v. Merry, L. R. 7 H. L. 530; Symons' Case, 5 Ch. App. 298. If he had sold to the bank, he would remain prima facie, if not actually, liable, if the bank should so elect. And if the seller of shares remains liable under the national banking act until there is a registered valid transfer—that is, until some person succeeds to the stock who is capable of holding it and liable in respect to it—this principle will not make Laflin liable under the facts of the present case. Here the transfer was registered, but Britton, instead of registering it in his own name, as it was his duty towards Laflin to do, registered it in his name as "trustee," without Laflin's knowledge. But the act (Rev. St. § 5152), authorizes the holding of stock by a trustee. If Laflin, in order to relieve himself of liability, is bound to see the transfer of the stock registered, the registry actually made would not charge him with constructive notice that the bank was in reality the cestui que trust.

Britton is responsible personally, inasmuch as he had no authority to act for the bank, and as there is no cestui que trust who is liable. He is liable for the unauthorized investment and use of the trust money of the bank, and can be compelled to refund it. Great Eastern Railway Co. v. Turner, 8 Ch. App. 149. If it becomes necessary to assess the stockholders, he will be estopped to say that he is not individually responsible, since he was not acting by authority of any cestui que trust capable of taking and holding the shares. If the sale of this stock had been registered to Britton individually, it is clear that Laflin would not have been liable to the bank or its creditors; and, as the matter now stands, the bank and its creditors have every right and remedy against Britton which they would have had if the shares had been transferred to him individually instead of to him as "trustee."

Our third proposition is that Laflin is not liable because the money received for the stock was unlawfully taken by Britton from the bank. The reason for this conclusion is that Laflin parted with value—with his shares, with his power of control over them, and the right to sell them to others—and had no notice at or prior to the consummation of

the transaction that Britton was acting ultra vires, and intended to misappropriate the funds of the bank. If he had dealt directly with the bank, or if he or his agent had known what took place inside the counter before the transaction with Britton had been completed, he would have been liable.

It is urged by the receiver's counsel that Laflin had constructive notice. Mr. Shields, in his argument, bases Laflin's liability on the proposition that, being a shareholder in the bank, he is charged with constructive notice of the condition of the bank, and of what was done by the president in violation of law and of his official duty in respect of these shares. I admit that if, in a transaction directly with the bank, he had received moneys to which he was not entitled, he could be made to pay back the same, irrespective of the question of knowledge on his part. Curran v. Arkansas, 15 How. [56 U. S.] 304; Railroad Co. v. Howard, 7 Wall. [74 U. S.] 392. But it is to be remembered in this case that Laflin is sought to be made liable in respect of the sale and transfer of his shares, which sale and transfer he had the perfect right to make, if he acted bona fide; and he has the same right to sell his shares to another shareholder that he would have to sell them to a person not a shareholder. Even directors have the right to make a bona fide sale of their shares, and thus get rid of liability, if they pursue the articles or charter, and take no advantage of their position and commit no fraud. Gilbert's Case, 5 Ch. App. 559; Ex parte Littledale, 9 Ch. App. 257. And shareholders, in the exercise of their right to transfer shares, are not bound, it seems, to take notice of irregularities on the part of the directors in respect to the transfer of shares. Bargate v. Shortridge, 5 H. L. Cas. 297, 323; Taylor v. Hughes, 2 Jones & L. 24; Ex parte Bagge (In re Northern Coal Min. Co.) 13 Beav. 162. Nor are directors, it seems, much less shareholders. in the transfer of their stock, bound to take notice of the books of account of the company. Cartmell's Case, 9 Ch. App. 691; Hill v. Manchester & S. Waterworks Co., 2 Nev. & M. 573; 5 Barn. & Adol. 874; Haynes v. Brown, 36 N. H. 568.

We are of opinion, therefore, that the sale and transfer of the stock, as between Laflin and Britton, was complete as soon as the stock was delivered, assigned in blank, with the power to transfer, and payment received; and that what Britton, without Laflin's knowledge, afterwards did, although on the same day, in transferring the shares to himself as trustee for the bank, and in reimbursing himself out of the funds of the bank, could not retroact upon Laflin, whose status had already been fixed, and whose rights had already been acquired. Bank of America v. McNeil. 10 Bush, 54, 58.

Mr. Henderson's argument for the receiver went mainly upon the ground that Laflin was chargeable, through Mr. Girault, with constructive notice of Britton's wrongful acts in the purchase of these shares, and in the use of the bank's money to reimburse himself therefor.

This argument rests upon these propositions: That the sale was not complete until the transfer was registered; that, in making the transfer. Girault, although acting under Britton's directions, was solely Laflin's agent (by virtue of his inserting his name in the blank power of attorney); and that, inasmuch as Girault knew of Britton's acts in directing the transfer for the benefit of the bank, and in paying himself for the purchase money out of the general means of the bank, the law imputes this knowledge to Mr. Laflin. The first branch of this proposition is inconsistent with the one which we have above attempted to maintain, viz., that the transaction between Laflin and Britton was complete without registration of the transfer, and that it is equally complete as to the bank, unless the bank had some valid reason for refusing to register the transfer. Britton had the right to register the purchase in his own name. He was in good credit with the bank, and in the community. He was not then known to be insolvent—indeed, it is not shown by the proofs that he is now insolvent. Laflin could have compelled him to register the transfer in his own name. In the eye of the law, the transfer to Britton as "trustee" is a transfer to Britton individually; for, as above shown, Britton could not set up his ultra vires acts to defeat his personal responsibility. Ashhurst v. Mason, L. R. 20 Eq. 225; Ex parte Littledale, 9 Ch. App. 257. If Laflin had a completed right, immediately on receiving payment for the shares, to have Britton register the transfer of the shares, and if, immediately on such payment, Britton had the right to register the transfer to himself, and if the bank could not have resisted Laflin's application to compel a registration of the transfer to Britton, it is obvious that notice subsequently received by Laflin personally, or through an agent, would be immaterial.

If this view is sound, it is unnecessary to decide the further question, whether Girault. in consequence of his relations to Britton, and the fact that he acted as his servant. and implicitly obeyed his directions, is to be regarded, in making the formal act of transfer on the books, as the agent of Laflin, in such sense that knowledge acquired by him from Britton is to be imputed to Laflin. It deserves consideration. whether. under the circumstances, Girault was Laflin's agent, so as constructively to affect Laflin with notice of what was being done, not in the necessary or lawful execution of his authority, but in violation of that authority, and in hostility to his rights, as well as those of the bank. These are the positions taken by Mr. Slayback, in Mr. Laflin's behalf, and

they certainly have great force. For, in this view, if the name of some one outside the bank, having no knowledge of what was going on inside the bank, had been filled in by Britton as the attorney to make the transfer, or if Britton had filled in his own name, Laflin would not be liable. It is certainly extremely narrow ground to make Laflin's liability depend upon the accident whose name shall be used to make the formal transfer, and upon what knowledge of the interior working of the bank such person may happen to possess, especially in view of the custom to transfer stock in blank through many hands before any registry is made.

It is strongly urged at the bar by Mr. Henderson, for the receiver, that the foregoing views of the right of the shareholder to transfer his shares will have the effect to permit transfer to persons not able to respond to the double liability imposed on shareholders, and thus work an injury to the solvent shareholders and to creditors. But we must hold to the absolute right of the share-owner to transfer his stock in good faith, or the alternative that the directors may have the right to refuse their assent to such transfer, thus putting a shareholder in their power. Not a syllable can be found in the banking act giving the directors such a power; while, on the other hand, the right to transfer shares. is expressly recognized. If it is desirable for the security of the shareholders or creditors that the existing members should, through the directors, have a veto on the right of a shareholder to transfer his shares, such a power must be plainly conferred. It has not been given, and cannot, therefore, be held to exist.

It is proper to remark, in order to preclude erroneous inferences from the views here maintained, that it is probable that the unrestricted right of transfer has reference to transfers in solvent and going concerns, and is not intended to enable shareholders to escape from liability where the association has committed an act of insolvency, or has ceased to be a going concern. Allin's Case, L. R. 16 Eq. 449, per Lord Chancellor Selborne; Chappell's Case, 6 Ch. App. 902. While we maintain the right of a shareholder dispose of his shares absolutely, by an out-and-out sale and registered transfer, and thus escape liability, provided the sale is made bona fide, and the purchaser is in law capable of assuming the liabilities of the transferrer. yet this does not involve the right to transfer shares for a fraudulent purpose, or under circumstances which the transferrer knows will make the transfer, if it is sustained, work a fraud upon the other shareholders, or upon the creditors of the bank.

The result is, that there must be a decree dismissing the bill as to Laflin, and as the bill is not framed for separate relief against Britton, dismissing the same as to him also, but without prejudice. Bill dismissed.