## AMERICAN ALKALI CO. v. CAMPBELL.

(Circuit Court, E. D. Pennsylvania. · February 6, 1902.)

### No. 66.

1. CORPORATIONS—CALL ON STOCK—LIABILITY.

The registered owner of preferred stock of a corporation, on call made thereon during the continuance of such ownership, becomes charged with a definitive debt, and is liable thereon, though he has made no express promise to pay.

**2.** SAME—TRANSFER OF STOCK—LIABILITY FOR CALL.

Where the registered owner of corporation stock, after call made thereon, transferred his shares on the books of the corporation to a purchaser before any installments of the call were payable, he was not thereby relieved from his obligation to pay the call, which became a fixed debt at the time of the call.

**3.** SAME—ASSENT OF CORPORATION.

The assent of a corporation to a transfer on its books of preferred shares, on which a call has been made, does not relieve the registered owner thereof at the time of the call from the liability fixed by the call.

**4.** SAME—FORFEITURE FOR NONPAYMENT OF CALL—CUMULATIVE REMEDY.

Though a corporation is authorized by statute to forfeit shares of stock for nonpayment of calls made thereon, it can still enforce payment thereof by action against the registered owner of such shares at the time of the call; the remedy of forfeiture being merely cumulative.

**5.** SAME—EXCHANGE OF SHARES FOR PAID-UP SHARES—REMEDY OF OBJECTING STOCKHOLDER.

Where the directors, authorized by the stockholders of a corporation, resolved to issue paid certificates of preferred st. ck on which $20 was paid in exchange for outstanding unpaid shares of preferred stock, and to place in the treasury of the company the remaining shares, the remedy of an objecting stockholder would be a suit to restrain consummation of such proceeding.

**6.** SAME — CALLS — EXTENSION OF TIME — EXCHANGE OF SHARES FOR PAID-UP SHARES—FORFEITURE OF FRANCHISE.

The directors of a corporation passed resolutions extending the time for payment of the first installment of a call on preferred shares, and directing an exchange of stock, whereby two shares of full-paid and nonassessable preferred stock should be exchanged for five shares of the preferred stock on which $20 would have been paid; thus leaving three-fifths of the preferred stock in the treasury, and two-fifths outstanding. *Held* to show no effort to reduce the capital stock of the corporation, by purchasing its stock or otherwise, so as to forfeit its franchise, and thus deprive it of the right to recover the debt incurred by a stockholder by a call on the preferred stock.

**7.** SAME—RECOVERY OF CALL—AFFIDAVIT OF DEFENSE—SUFFICIENCY.

In a suit by a corporation to recover an unpaid call on stock, an affidavit of defense alleging fraud in making the call, and that in order to carry out the fraud an assessment was levied, though unnecessary for any purpose of the company, but not alleging that the assessment was in excess of the directors' powers. or would be unnecessary if it were intended that the company should continue to prosecute its business, is insufficient.

**8.** SAME—AFFIDAVIT OF DEFENSE—SUFFICIENCY.

Under Rev. St. U. S. § 954, which requires United States courts to proceed to judgment according to the right of the cause, without regarding any defect in a declaration, except those which, in cases of demurrer, the party demurring specially set down, together with his demurrer, as the cause thereof, an affidavit of defense in an action by a corporation to recover a call on stock, stating that the statement of claim shows no cause of action, and is insufficient to justify a verdict or judgment, amounts, at most, to a general demurrer, and is insufficient to bar the cause of action.

**9.** SAME—DECLARATION—SUFFICIENCY.

A statement of claim alleged that defendant was the registered owner of a certain amount of stock in plaintiff corporation, and that by virtue of a call, notice, and demand thereon, which were set forth, defendant became liable to pay a specified amount. No agreement by defendant to pay the call in question was alleged, nor was the plaintiff's certificate of incorporation made part of the declaration. Defendant was not alleged to be the holder of the stock at the time when the call became due and payable. *Held*, that the declaration was sufficient.

**10. SAME—DEFENSE—IRREGULARITY OF ORGANIZATION.**

The owner of stock in an acting corporation cannot defend himself in an action to recover calls made on such stock by alleging irregularity of the corporation's organization.

**11. SAME—DECLARATION—AMENDMENT.**

Under Rev. St. U. S. § 954, which requires United States' courts to give judgment without regarding defects in a declaration, except those which, in cases of demurrer, the party demurring specially set down together with his demurrer, as the cause thereof, a statement of claim in an action by a corporation to recover unpaid calls on stock may be amended by an allegation that the balance remaining due on the stock after the first installment thereon had been paid has not since been paid.

**12. SAME—AFFIDAVIT OF DEFENSE—AMENDMENT.**

Where an amendment of a statement of claim has been allowed, a supplemental affidavit of defense, confined to the subject-matter of such amendment, will also be allowed.

Burr, Brown & Lloyd, for plaintiff.
F. B. Bracken, for defendant.

DALLAS, Circuit Judge. This is an action upon a call made by the board of directors of the plaintiff corporation on the holders of its preferred stock of record on September 16, 1901. It has been heard upon plaintiff's rule sec. reg. for judgment for want of a sufficient affidavit of defense. The plaintiff's statement of claim alleges that on September 16, 1901, the defendant was the holder of 5,100 shares of the said preferred stock, which were duly registered, and stood in his name upon the books of the company; and it avers that by reason thereof, and by force and virtue of the call, notice, and demand set forth, the defendant became, and then was, liable to pay the plaintiff the sum of $12,750 on November 11, 1901; being $2.50 per share due upon that date under the terms of said call as modified by resolution of September 25, 1901. The affidavit of defense first filed, which is somewhat voluminous, need not be here set forth at length, nor even summarized; for defendant's counsel has clearly defined the questions intended to be raised by it, and, as the counsel for plaintiff has conceded that those questions are adequately presented for decision, the attention of the court may well be confined to their consideration.

The defendant, as the registered owner of preferred stock of the corporation plaintiff when the call sued on was made, was liable thereon, though he had made no express promise to pay. Webster v. Upton, 91 U. S. 66, 23 L. Ed. 384. The duty which before call pertains to such ownership is inchoate and indefinite, but, upon call made and notified, the owner, by reason of that pre-existing duty, becomes charged with a definitive debt,—a sum fixed and certain, which he is absolutely bound to liquidate. The learned counsel of the defendant has urged upon my attention the case of Braddock v. Railroad Co., 45 N. J. Law, 363, where it is said that "a call is nothing more than an official declaration that the sums subscribed are to be paid"; but by this, I think, is meant—what is obviously true—that a call cannot be creative of the pre-existing duty to which I have referred, and which in Webster v. Upton, supra, is defined as "the legal duty of paying all legitimate calls made during the

continuance of the ownership." It does not mean that one who is a stockholder—not by subscription, but by assignment—becomes, by reason of his legal duty to pay all calls when and as made, an actual debtor of the company from and at the time he acquires his shares, even though no call whatever be in fact made during the continuance of his ownership. To my mind, such a proposition would appear to be manifestly unsound, and careful reading of the entire opinion of the New Jersey court has satisfied me that it had no thought of affirming it. The general rule that the indebtedness which is established by a call is that of the persons who at that time are recognized on the company's register as the owners of its stock is not rendered inapplicable to the present case, either by any peculiarity of this particular call, or by reason of the fact that, after the call had been made, the defendant's shares were transferred on the books of the corporation to a purchaser to whom he had previously sold them. The statement of claim alleges the call in accordance with what seems to me to be its clear legal effect,—as being "a call for $10 per share on the holders of the preferred stock of the plaintiff company of record on September 16, 1901"; and, inasmuch as the defendant was then of record as such holder, I see no reason to doubt that he was bound by it. He was not, it is true, required to pay, except in installments to mature at later dates, but his position as a debtor was then finally fixed. Was it shifted to the transferee by the transfer which subsequently, but before any part of the sum called became payable, was made on the books of the company? I think not. Whatever right, if any, the transferror might have as against the transferee, the responsibility of the former to the corporation itself was one arising out of a duty imposed by the law; and therefore, even if it be assumed that the company's assent to the transfer was given with intent to discharge him, and by one having full authority to do so on its behalf, yet it may well be doubted whether such assent could in any case have the effect of releasing a particular stockholder from the common obligation of each of them to contribute to make good the subscribed capital, for the benefit of the general body of stockholders as well as of the corporation's creditors, if any. Burke v. Smith, 16 Wall. 394, 21 L. Ed. 361. But there is nothing to warrant the supposition that, in permitting the transfer in this instance, it was intended to discharge the defendant from his then positively incurred indebtedness. The existence of such intent is certainly not a necessary inference from the conduct of the company, and it cannot be implied upon mere conjecture, however plausible. In Hood v. McNaughton, 54 N. J. Law, 428, 24 Atl. 497, "a distinction is drawn between one who holds his stock by transfer and the original subscriber. The former may, in the absence of any fraudulent purpose, discharge himself from liability for unpaid installments by due transfer of his shares, while the latter cannot obtain immunity in that way." But the installments which are here referred to are not installments payable on a call previously made, but the uncalled installments of the balance due on the original subscription, which a stockholder by assignment is under the legal duty of paying if called for "during

the continuance of his ownership." The correctness of this understanding is plainly shown by the employment of the same word ("installment") a few lines below in the opinion, where it is said that the subscription constitutes "a contract between the subscriber and the company, by which the subscriber engages to pay the remaining installment [i. e., the balance due on his subscription] on demand by the corporation." It is this duty of paying "the remaining installment" on demand which devolves upon a stockholder by transfer, and, as that duty attaches to any call made during the continuance of his ownership, his consequent liability becomes fixed when a call is made, and, when so fixed, cannot be discharged by any subsequent disposition which he may make of his shares, even if accompanied or followed by transfer. Whether the corporation's auxiliary right to forfeit and sell these shares was lost or waived by its acquiescence in the change made in their ownership is unimportant; for neither the obligation to pay, nor the personality of the obligor, would be affected or altered by the obligee's relinquishment of one of the means provided for securing the debt and facilitating its collection. The statutory provision for forfeiture affords a cumulative, not an exclusive, remedy. The law to this effect is well stated, and in accordance with at least the great weight of authority, in Cook, Corp. § 124, as follows:

"Frequently, when a corporation is authorized by statute to forfeit shares for nonpayment of the subscription, the question arises whether the statutory remedy of forfeiture is exclusive, thereby preventing a resort to the common-law remedy of an action of assumpsit on the contract. It is the well-established rule that it does not. A grant of the power to declare a forfeiture of the shares of a subscriber for nonpayment of calls does not, by implication, deprive the corporation of its option of remedies; and the corporation may, in its discretion, upon the failure of the subscriber to pay for his stock, either proceed against him by suit to collect the unpaid calls, or may forfeit his shares of stock. The corporation, by such a statute, is given its choice of remedies, and may pursue either. The remedy by forfeiture is additional. In legal language, the remedy by forfeiture is cumulative."

For the reasons which have been indicated, I hold that the defendant was liable upon the call in question (if valid), notwithstanding his sale of his stock and its transfer on the books of the company as alleged by him, and that such liability is enforceable by action, although the New Jersey statute authorized the sale, when ordered by the board of directors, of such number of the shares of a delinquent owner as will pay all assessments then due. But the validity of the call is denied upon two grounds, and these will now be separately considered.

1. It is contended that "by virtue of the resolutions of September 25th, passed by directors of plaintiff company, and approved by the stockholders October 30, 1901, as stated in the affidavit of defense, the terms of the call sued upon were radically changed, and the said resolutions are of such a character as to relieve the defendant from liability." No authority has been cited as sustaining this proposition, and the very ingenious argument which has been submitted in its support has not convinced me that it should be accepted.

The resolutions upon which it is based are set out or mentioned in the affidavit of defense as follows:

" 'Resolved, that payment of the first installment, of $2.50 per share, payable October 21st, 1901, be, and the same is hereby, extended to November 11th, 1901. Resolved, that it is the judgment of this board that the best interest of the stockholders will be served by the exchange of two shares of the preferred stock of this company, full paid and nonassessable, for five shares of the preferred stock of this company, on which twenty dollars ($20) shall have been paid, after which exchange there will remain in the treasury of the company three-fifths of the preferred capital stock. amounting to seventy-two thousand (72,000) shares, leaving outstanding forty-eight thousand (48,000) shares of the full-paid preferred stock, of the par value of fifty dollars ($50) per share. Resolved, that a special meeting of the stockholders of the American Alkali Company be called and held at the registered office of the company, 417-19 Market street, in the city and county of Camden, in the state of New Jersey, on Wednesday, October 30th, 1901, at twelve o'clock noon, for the purpose of authorizing the exchange of full-paid preferred shares as set forth in the foregoing resolution. the election of a board of directors, and for such other business as may come before the meeting.' And at a special meeting of the stockholders of said company held in pursuance of the last above recited resolutions at said company's office. in the city of Camden, state of New Jersey, on October 30, 1901, a resolution was adopted authorizing the exchange of full-paid preferred shares as set forth in the resolution last above recited."

If it were true, as is contended for defendant, that the effect of these resolutions, if acted upon, would be to reduce the capital stock of the company, it would not follow that the defendant's liability upon the call which had been previously made would be thereby annulled. The procedure proposed was not only recommended by the judgment of the board of directors, but was expressly authorized by the stockholders themselves; and, if they were without lawful power to confer such authority, the obvious remedy of an objecting stockholder would be by suit in equity to restrain the consummation of the scheme. Neither its proposal nor adoption would dissolve the corporation. If carried into effect, a forfeiture of the corporation's franchise to exist and to conduct its legitimate business would not result, and therefore its right to sue for the recovery of debts due to it, including those created by calls upon its stockholders, would not be lost. But I cannot perceive that these resolutions did in fact contemplate or produce a reduction of the capital stock of the company. They merely authorized the directors to issue full-paid certificates to the extent which the payments made would justify, and thereupon not to cancel, but to place in the treasury of the company, the remaining shares. "Hence this was not even an effort to reduce the capital stock of the company by purchasing its stock or otherwise. But if it had been intended as a purchase of its own shares, there are numerous cases which hold that a corporation may do so, and violate no duty to the stockholders unless prohibited by its charter." Chetlain v. Insurance Co., 86 Ill. 220.

2. In the brief submitted for defendant it is said that "it is not contended that mere mismanagement in the affairs of a company, or even fraud in its management, constitutes a defense to an action for calls on stock; but in this case the allegations in the affidavit

go much further, and charge fraud in the making of the call itself." Substantially, then, what the defendant alleges is that a fraud was practiced upon him and other holders of the preferred stock by the directors of the company, in making this call, and that, in order to carry out a fraudulent scheme, the assessment was levied, although unnecessary for any purpose of the company. But it is not alleged that the assessment was in excess of the powers of the directors, nor that it would be unnecessary if it were intended that the company should continue to prosecute its business. Consequently the following observations of Mr. Justice Field in Oglesby v. Attrill, 105 U. S. 609, 26 L. Ed. 1186, are directly applicable, and seem to be conclusive against the sufficiency of this particular defense. He said:

"As to the wisdom of an assessment, or its necessity at the time, or the motives which prompt it, the courts will not inquire, if it be within the legitimate authority of the directors to levy it, and the objects for which the company was incorporated would justify the expenditure of the money to be raised. They will not examine into the affairs of a corporation to determine the expediency of its action, or the motives for it, when the action itself is lawful."

This authoritative statement of the law, although it does preclude stockholders from setting up a fraudulent motive in levying an assessment as a defense to an action at law brought for its recovery, does not leave them wholly without remedy; for they are, upon plain equitable principles, entitled to the assistance of a court of chancery "by decree compelling the directors to wind up the company's business and distribute the assets among those who are entitled to them, unless they can be lawfully used for other business purposes allowed by the charter." Benedict v. Construction Co., 49 N. J. Eq. 23, 23 Atl. 485.

The affidavit of defense originally filed, after presenting the several defenses which have been considered as in bar of the cause of action as set forth in the declaration, contains this final paragraph:

"Defendant further avers that he is advised and believes that the facts alleged in plaintiff's statement of claim filed in this case do not show any cause of action against the defendant, and are not sufficient to justify the finding of a verdict or the entry of a judgment against the defendant for the amount of the claim in this suit, or any part thereof."

The utmost that can possibly be said for this averment is that it amounts to a general demurrer; but the courts of the United States are required, in all civil cases, to proceed and give judgment according to the right of the cause, without regarding any defect in a declaration, except those which in cases of demurrer the party demurring specially sets down, together with his demurrer, as the cause thereof. Rev. St. § 954. If, however, the court were at liberty and inclined to disregard this statutory mandate, it would not, I think, be justified in refusing the judgment now asked for by reason of any of the objections to the statement of claim which have been relied on in argument. It is by no means clear to me that it does not sufficiently allege that the balance remaining due upon the original subscription to the preferred stock after the first installment of $10 thereon had been paid has not since been paid,

but, in abundance of caution, the plaintiff will be allowed to amend in this particular. Id. I am of opinion that it is not necessary that the statement of claim should set out any provision of the laws of the state of New Jersey further or otherwise than it already does; that an agreement by the defendant to pay the call in question need not be either alleged or proved; that it is not essential to the plaintiff's right of action that it should appear that the defendant was a holder of stock at the time when the call became due and payable, and that it was not incumbent upon the plaintiff to make the entire certificate of its incorporation a part of the declaration.

The brief of the defendant includes no point especially founded upon the supplemental affidavit of defense. That affidavit, however, I have carefully examined, and I understand its purpose to be to show that the organization of the plaintiff company was irregular, and that its certificate of incorporation is defective. Whether or not it does show this, I do not feel called upon to determine, inasmuch as "it is settled by the decisions of the courts of the United States and by the decisions of many of the state courts, that one who contracts with an acting corporation cannot defend himself against a claim on such contract, in a suit by the corporation, by alleging irregularity of its organization. * * * The same principle applies to the case of a subscription to the capital stock in an organization which has attempted irregularly to create itself into a corporation, and has acted as such." Chubb v. Upton, 95 U. S. 667, 24 L. Ed. 523.

The plaintiff is allowed to amend its statement of claim by inserting therein an allegation that the balance remaining due upon its preferred shares of stock after the first installment of $10 thereon had been paid has not since been paid, and leave is granted to the defendant to file within 15 days after notice of such amendment a further supplemental affidavit of defense, which, however, must be confined to the subject-matter of said amendment; and, if no affidavit be filed in pursuance of the leave hereby granted, the plaintiff's present rule for judgment for want of a sufficient affidavit of defense will be made absolute.