NASHUA SAVINGS BANK v. ANGLO–AMERICAN LAND–MORTGAGE & AGENCY CO., Limited.

(Circuit Court of Appeals, First Circuit. April 24, 1901.)

No. 303.

1. EVIDENCE—AUTHENTICATION OF FOREIGN STATUTES.

In an action by a corporation of Great Britain against a stockholder to enforce liability for unpaid assessments on the stock, the statutes governing such liability are sufficiently authenticated and proved by the testimony of an English solicitor, familiar with company law, and who was also a director in the company, stating under what acts it was organized, and that copies which he produced were copies of such acts, and also that they were published by governmental authority.

2. APPEAL—REVIEW—QUESTIONS PRESENTED BY RECORD.

Where the record on a writ of error from the circuit court does not purport to contain all the evidence, or all the material evidence, the questions whether the court erred in refusing a request to direct a verdict for defendant, or in directing a verdict for plaintiff, cannot be considered.

3. SAME—PRESUMPTIONS—FAILURE OF RECORD TO SHOW THAT IT CONTAINS ALL THE EVIDENCE.

In an action by a foreign corporation against a stockholder to recover an assessment made on his stock, the fact that no evidence was offered by plaintiff to show that it was insolvent when the assessment was made, or that such call or assessment was made for the benefit of creditors or in payment of debts, does not preclude a recovery, where, under the statutes governing the corporation, calls might legally be made for other purposes; and where, on appeal from a judgment for plaintiff, the record does not purport to contain all the evidence, it must be presumed that due proof was made of the regularity of the corporate meetings and of the calls.

4. FOREIGN CORPORATION—ACTION AGAINST STOCKHOLDER TO RECOVER ASSESSMENT—LAW GOVERNING LIABILITY.

In an action by a foreign corporation in a court of the United States against a stockholder to recover a call made upon his stock, which by the statutes under which the corporation was organized is made a debt from the stockholder to the corporation, for which the corporation is also given a lien on the stock, the plaintiff is not restricted to the forfeiture and sale of defendant's stock, because that is the only remedy provided by the laws of the state in which the action is brought, but may enforce defendant's personal liability. Strictly speaking, such action is not based upon the foreign statute, but on the contract voluntarily made by the defend-

ant when he became a stockholder, of which such statute defining the liability of stockholders became a part.

**5. ACTION—FORM—ASSUMPSIT.**

The English companies act (25 & 26 Vict. c. 89, § 16) provides that "all moneys payable by any member to the company in pursuance of the conditions and regulations shall be deemed to be a debt due from such member to the company; and in England and Ireland to be in the nature of a specialty debt." *Held.* that assumpsit was the proper form of action in a court of the United States to enforce the liability of a stockholder to a company organized under such acts for a call made upon his stock pursuant to the provisions thereof.

Aldrich, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of New Hampshire.

John S. H. Frink, for plaintiff in error.

Omar Powell (Gilbert A. Davis and Daniel L. Cady, on the brief), for defendant in error.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge.    This writ of error is to review the rulings of the circuit court in an action of assumpsit by the Anglo-American Land-Mortgage & Agency Company, Limited, a corporation of Great Britain, to recover from the Nashua Savings Bank, a New Hampshire corporation, a stockholder in the Anglo-American Company, unpaid assessments upon stock.    A verdict was directed for the plaintiff below, now defendant in error.

The first exception requiring consideration relates to the sufficiency of proof of the statutes of Great Britain that govern the Anglo-American Company, and also provide that "all moneys payable by any member to the company in pursuance of the conditions and regulations shall be deemed to be a debt due from such member to the company; and in England and Ireland to be in the nature of a specialty debt."    25 & 26 Vict. c. 89, § 16.    We are of the opinion that the statutes were sufficiently authenticated by the deposition of an English solicitor familiar with company law, and a managing director of the Anglo-American Company.    He states under what laws the company was organized, referring to them by their titles, and testifies that he produces copies of the acts, and also that "these copies are issued by authority, being printed by her majesty's printer, and are as such by law receivable in evidence without further proof."    We have, therefore, evidence from a competent witness not only that the documents are copies of the laws under which the company was organized, but also evidence authenticating printed copies of these laws.    The witness does not, as counsel contend, simply produce certain transcripts which he says prove themselves, but states upon his own authority that they are copies of the laws, and also by his oath authenticates the documents as official copies.    This proof is ample.    Church v. Hubbart, 2 Cranch, 238, 2 L. Ed. 249; Ennis v. Smith, 14 How. 426, 14 L. Ed. 472; Hall v. Costello, 48 N. H. 176; Kennard v. Kennard, 63 N. H. 303; State v. Davis, 69 N. H. 350, 41 Atl. 267; Barrows v. Downs, 9 R. I. 446; The Pawashick, 2 Low.

142, Fed. Cas. No. 10,851. The plaintiff therefore clearly proved that the defendant, as a stockholder, voluntarily assumed such liability as is set forth in the portion of the statute we have quoted.

The majority of the court are of the opinion that, as the record does not purport to contain all the evidence, or all the material evidence, the questions whether the circuit court erred in declining the defendant's request to direct a verdict for the defendant, and whether that court erred in directing a verdict for the plaintiff, cannot be considered. City of Providence v. Babcock, 3 Wall. 240, 244, 18 L. Ed. 31; Railroad Co. v. Cox, 145 U. S. 593, 606, 12 Sup. Ct. 905, 36 L. Ed. 829; Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746; Yates v. U. S., 32 C. C. A. 507, 90 Fed. 57, 62.

It appears from the record that the plaintiff introduced no evidence that the plaintiff corporation was insolvent at the time of making the calls or assessments sued upon, or that the call or assessment was made for the benefit of creditors or in payment of its debts; but this statement does not cover all the purposes for which calls might be made legally, and the statement that this proof was absent does not make it appear affirmatively that other and sufficient proof was not presented. It does not appear that the call was not regularly made, and for proper purposes. The objection made upon the motion to direct a verdict that the declaration contained no averment or allegation upon what conditions the plaintiff was authorized to make such calls or assessments does not raise the question of the sufficiency of proof that the call was duly made. We are bound to assume, upon this incomplete record, that the proofs of the regularity of this call were sufficient. The necessity for applying in this case the rule of law that regularity of proceedings in the trial court shall be assumed until the contrary appears is shown by the fact that the learned judge, in his remarks preliminary to the direction of a verdict, referred to evidence not presented here, and stated that there was no doubt that the call for the assessment was properly proven, and also that no question was made as to the regularity of the meetings of the directors. As the majority of the court are of the opinion that we are bound to assume upon this record that due proof was made of the regularity of the corporate meetings and of the calls, we are of the opinion that the question whether we are to accord to the corporate proceedings of a foreign and alien corporation the same presumption of regularity that exists in respect to domestic corporations does not arise upon this record.

The remarks of the learned judge in directing a verdict for the plaintiff were simply explanatory of the views of fact and law that led him to take that course, and were not subject to exception. The court itself determined the issues; and the question whether it erred in so doing can be determined only upon a complete record of the evidence, or upon a record containing all material evidence. This record is not shown to be such.

We think that only two substantial questions are presented,— the first, as to the sufficiency of the proofs of the English statutes, which we have considered; and the second, the question whether the company, in seeking to enforce the payment of calls, is restricted

to the sale and forfeiture of the defendant's shares, in accordance with the law of New Hampshire. We are clearly of the opinion that it is not. The present action is not, strictly speaking, founded upon an English statute, but upon an obligation voluntarily assumed by the defendant as a stockholder. The English statute that became a part of the charter of the company defines the liability of the stockholder, but it is the act of the defendant in voluntarily assuming this liability by the purchase of its stock that is the basis of the present action. Railway Co. v. Gebhard, 109 U. S. 537, 3 Sup. Ct. 363, 27 L. Ed. 1020; Hawkins v. Glenn, 131 U. S. 329, 9 Sup. Ct. 739, 33 L. Ed. 184; Webster v. Upton, 91 U. S. 69, 23 L. Ed. 384; Relfe v. Rundle, 103 U. S. 222, 226, 26 L. Ed. 337. Though it appears by the articles of association that the company has a lien upon the shares of a stockholder, and may enforce such lien by sale or forfeiture, yet this is not the exclusive remedy; for, by the statute, which has become a part of the articles of association, and to which it has consented, the bank became liable, also, as for a debt. The company therefore has two concurrent remedies, and was strictly within its right in electing to proceed by an action at common law instead of by sale and forfeiture. If we assume that the question of the form of action properly arises upon this record, the exceptions which relate to the form of action must be overruled, since we are of the opinion that indebitatus assumpsit was the proper form of action. 2 Chit. Pl. p. *53; Gould, Pl. c. 3, § 19; Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818; Mandel v. Cattle Co., 154 Ill. 177, 40 N. E. 462, 27 L. R. A. 313. The judgment of the circuit court is affirmed.

ALDRICH, District Judge (dissenting). The plaintiff is an alien business company organized under what are known as the "English Companies' Acts," and I disagree with my associates upon the questions as to the sufficiency of the evidence to warrant a verdict, and as to what is shown by the record, and as to presumptions of evidence below not stated in the record. In this case, at the close of all the evidence, contrary to the situation in Hansen v. Boyd, 161 U. S. 397, 16 Sup. Ct. 571, 40 L. Ed. 746, cited in the majority opinion, the defendant moved the court to direct a verdict in its favor upon the pleadings and evidence in the case; and, if under such circumstances the appellate court must assume that the court below had before it sufficient evidence to justify its ruling, it can never review the question whether the evidence there was sufficient to justify a verdict for the plaintiff. Moreover it is expressly shown by the record that "the statutes, memorandum, and articles of association, certificate of stock, and Frederick H. Ramsden's testimony constitute all the evidence bearing upon the question of the plaintiff's incorporation and organization"; and the record expressly negatives the presence of certain other proofs which I maintain were necessary and essential to plaintiff's case. So, as I view the record, it is one which purports to present all the proofs material to the question of sufficiency of evidence. The essential question here is whether there was evidence sufficient to warrant the verdict, and upon that question we must look to the record, and cannot look beyond. The mo-

tion below and the exceptions raised that question distinctly, and the case, coming here upon such exceptions based upon such a motion, called for all the evidence; and we are bound to assume that it is all here, and inquire whether, upon the evidence disclosed by the record, the verdict was warranted. I dissent upon the ground that upon the evidence below, as shown by the record, unaided by presumptions of regularity of corporate proceedings, and presumption or intendment in favor of business necessity, there is no sufficient evidence to warrant the verdict. Aside from presumption the plaintiff's case is a mere shadow, with no evidence to show that it is anything more than a paper organization,—a mere fiction. There is no evidence to show that the corporation ever did business; that it has any debts behind it or business before it; and coming here and bringing its suit where it is not maintained as a matter of right, but upon grounds of international comity only, presumptions of corporate regularity and business necessity should not be accorded to it in order to establish or aid a recovery, but, on the contrary, for abundant reasons the corporation should be required to prove its case by affirmative evidence, not alone of a regular call, but of a regular organization, regular corporate proceedings, and compliance with all the requirements of the home statute; and evidence that the company has either done business and needs money to pay debts, or is a going concern and needs money for legitimate business purposes within the scope of the line expressed in the articles of association. A careful examination of the record and observations of the court below in directing a verdict show that the learned judge disposed of this case there upon the idea that it was only necessary, to make out its case, for the plaintiff to show a formal organization, that the defendant was a shareholder, and that the particular call upon the defendant below was regular on its face; and the majority opinion of my associates proceeds upon the idea that, as it does not appear that the call was not regular and for proper purposes, the verdict should stand, and so, in effect, accords to the plaintiff a presumption that the corporate proceedings were regular, and that the call was for proper purposes. It is from this view, and the effect of it, that I dissent.

I am fully persuaded that a plaintiff ought not to recover, under the circumstances of this case, on the meager proofs presented. Though the share subscriptions are nearly 10 years old, there is no evidence that this company ever did a dollar's worth of business, or intends to do a dollar's worth of business, or that shareholders other than the foreign shareholders who failed to register their address at the home office have ever been called upon, or that it is ever proposed to call upon other shareholders. Proofs as to other shareholders were treated below as entirely unnecessary to the plaintiff's case, and immaterial to the defendant's case, as will be seen by reference to assignment of error 17, where it was said, subject to exception: "It is of no sort of consequence, so far as this case is concerned, what happened about other calls or assessments;" and the view of the court below in this respect is further illustrated by reference to the record, where, subject to exception, it was said,

upon a question as to the introduction of an extract from the company records for the purpose of showing that the Nashua Savings Bank was a shareholder: "I will rule that, if the entire record were here, I should not allow anything read except this. This appears to be the entire record relating to this defendant." And by reference to assignment of errors 6, 7, and 15, including, of course, assignment 17, already referred to, it will be seen that the case was treated as one in which it was only necessary for the plaintiff to show a corporation de facto.

Quite aside from the alien character of the situation presented, which I shall consider later on, and notwithstanding that, under the English and American authorities, it is necessary, to an enforcement of a contract of this character, that all the shareholders should be treated alike, and that the call should be regularly authorized and made, and impartial and uniform among all subscribers,—see Cook, Stock & S. §§ 113, 114, and notes; 23 Am. & Eng. Enc. Law 808 (5), and notes; Mor. Priv. Corp. § 154; Telegraph Co. v. Burnham, 79 Wis. 47, 47 N. W. 373,—the question as to other calls was treated as unessential and altogether immaterial and unnecessary to the plaintiff's case. Again, aside from the alien phase of the situation, where, as in this case, the subscription contract by fair implication contemplates a strict performance of the statutory requirements and a strict compliance with the association regulations, or where, as in this case, the statute (Vict. 25 & 26, c. 89, § 16) makes the proceedings and records binding under certain formalities and conditions, compliance with the statutory and association regulations becomes an implied condition precedent to liability, and performance and compliance must be shown,—as, to illustrate, where the capital is fixed at a certain amount, the law implies that the capital shall all be taken before the corporation can enforce a call against a single shareholder (Mor. Priv. Corp. [2d Ed.] § 137, and authorities, note 1, p. 140); or, as, where the charter provides that a certain amount shall be subscribed before the call, a subscription is a mere offer until the amount is subscribed, and the entire amount must be subscribed in good faith, and must not be fictitious (Id. § 141); or, as, where shareholders are to pay when required by a vote of the board of directors, there is an implied condition precedent to liability that a regular call shall be made upon all the shareholders, and this is so even where there is no express provision in the charter or contract of subscription (Id. § 143), and this is upon the idea that the shareholders mutually agree to contribute capital when certain persons shall have made a call in a certain manner, and not before (Id. § 155); or, as, in an action against a shareholder to recover the amount of a call, the plaintiff must allege and prove both that the defendant is a shareholder, and that all conditions precedent to his liability have been performed (Id. §§ 141, 158; Turnpike Corp. v. Valentine, 10 Pick. 142; Fry's Ex'r v. Railroad Co., 2 Metc. [Ky.] 314, 323, 324). And this is because the agreement of the shareholder is to contribute after an authorized call has been made by properly elected agents, and, until such a call has been made, a condition precedent to his liability remains unperformed.

108 F.—49

Mor. Priv. Corp. § 150. So, upon the same principle, where the share subscription is payable in pursuance of conditions and regulations, and where the certificate is expressly made subject, as in this case, to the articles of association and the rules and regulations of the company, performance and compliance should be required to be shown by proper, affirmative proofs, rather than allowed to stand upon presumption and intendment.

That part of section 16, c. 89, Acts 25 & 26 Vict., to which the majority opinion refers as establishing the voluntarily assumed liability of the defendant, was doubtless only intended to declare and prescribe the nature of the remedy; that is to say, that the subscription should be deemed a debt due from him, and in the nature of a specialty debt in England and Ireland, to be recovered by an appropriate action. But, however that may be, it is sufficient for my purpose to say, whether it was intended to fix liability or to declare the nature of the remedy, it in express terms makes moneys payable by members "in pursuance of the conditions and regulations," thereby recognizing and expressing what is always read into such contracts, whether expressed or not,—that liability is incident to and conditioned upon fulfillment by the other party, by compliance with statutory and associate regulations; and compliance and performance therefore become a substantive element of the plaintiff's case, to be established by evidence. Even if the record discloses sufficient evidence of the face regularity of the calls, which I deny, there is no pretension in the record or in the majority opinion that there was any evidence that the calls were authorized by the resolution which the statute and the articles of association contemplate, or that the calls were uniform or necessary to pay debts or to do corporate business, or that there was any evidence showing whether the corporation was going or winding up, whether this attempt to recover is for corporate purposes, or whether the detached and incomplete extracts from the record are remnants of an exploded and defunct experimental association in the hands of speculators who found them in an attic. I am not contending against shareholder contract liability, as a general proposition, but that a plaintiff should be required to show that it has done the things which the statute and the contract contemplate should be done in order to mature the liability; that the recovery should be upon substance, rather than upon shadow. The corporate field of the last 10 years is strewn with wrecks of speculative associations, wrecks of corporations organized to do all sorts of things,—all the way from making cork from wood pulp to extracting gold from the seas. Records of such corporations can be had by the finding. The back rooms of vacated offices are filled with records and débris of experimental and defunct corporations,—some with records complete upon their face, and ornamented certificates of stock fair to look upon, which never started business, and others with incomplete records and partially filled subscription lists, ranging from one subscriber to 99 per cent. of the whole, which have attempted business and failed; and the length of struggle for life and the time of ultimate death are variously and mysteriously marked. If a case can be made out by

simply showing organization, and presenting a fragmentary extract showing a single subscription, and a scrap from the records showing a single call by a corporation which never did business, and never proposes to do business, and which carries, perhaps, two or three subscriptions for shares, only, the door is open to abuse, and recovery is easy and convenient for those who may hunt up and get possession of the records of wrecked and defunct corporations; but, to my mind, the corporate right of recovery upon a naked subscription contract should not be, and is not, so arbitrary, absolute, and conclusive as to justify a verdict founded upon such a meager and unsubstantial showing. In my view, the defendant's motion for a verdict for want of evidence, and its contention against the verdict on the ground of insufficient proofs and evidence, and its exceptions to the ruling denying the first and to granting the second, sufficiently raise the question, and therefore demand consideration at the hands of this court; and the particular manner in which the question is raised is pointed out further on.

This organization is a mere business arrangement, having none of the formalities of judicial proceedings, and not all of the formalities of corporate proceedings incident to our own statutory corporations; but, before entering upon a discussion of the particular question as to the alien character of the plaintiff, and the measure of proof to be required in a case like this, and as bearing thereon by analogy, I desire to point out the caution with which courts receive and enforce even the solemn judgments in personam of courts of alien countries. The particular question is one of substance and one of vast practical importance. It relates to the measure of proof to be required in respect to corporation or company necessities, and in respect to the regularity of corporate or company proceedings, including that of assessment calls upon stockholders in an alien country, where enforcement of alien rights is sought on grounds of international comity. And, as bearing upon this question, by reason of the force of analogy, we must keep in mind the caution exercised by courts of all countries in respect to accepting without proper proof the solemn statute laws of another and an alien country, as well as the reluctance with which the courts of the various countries have accepted as conclusive even judgments in personam of courts of foreign and alien countries. The opinion of the supreme court by Mr. Justice Gray in Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. '95, presents an exceedingly interesting and valuable historical and judicial review of the principles of international law involved in the question as to the credit and effect to be given to judgments of foreign countries, and of the rules of comity and justice which should control their enforcement. That case involved a judgment of a court of the French republic having general jurisdiction, which was sought to be enforced in the courts of the United States against a citizen of this country, and, as a result, it was treated as not entitled to the full credit which is accorded to judgments of the courts of our sister states; but, upon reasoning in respect to international conditions, it was said, in effect, if it appears from the judgment that it was rendered by a competent court, having juris-

diction of the cause and of the parties, and upon due allegations and proofs, and an opportunity to defend, and the proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, that the judgment is prima facie evidence, at least, of the truth of the matter adjudged, and conclusive of the merits, unless special ground is shown for impeaching it, or by the principles of international law, and by the comity of our own country, it is not entitled to full credit and faith. Thus it will be seen that, before the foreign judgment is accepted as prima facie evidence, it must appear as a substantive part of the plaintiff's case— not irregularities shown by the defendant, not want of jurisdiction and due allegations and proofs and lack of opportunity to defend shown by the defendant, or that the proceedings were not according to the course of civilized jurisprudence shown by the defendant; but it must appear in the plaintiff's case—that the judgment was rendered by a competent court, and one having jurisdiction of the cause and the parties, and one founded upon due allegations and proofs and opportunity to defend, and that the proceedings are according to the course of a civilized jurisprudence, and that they are stated in a clear and formal record; and when this is made to appear by the plaintiff a judgment will be accepted as conclusive, unless the defendant shows ground for impeaching it, like fraud or prejudice, or that by the principles of international law, or by the comity of our own country, it is not entitled to credit and effect. To illustrate by taking an extreme view in respect to international comity, in France a judgment of a foreign country sought to be enforced there is subject to an examination on its merits,—au fond,—on the view that judgments in favor of a foreigner against a Frenchman by a foreign court are subject, when execution of them is demanded in France, to the revision of the French tribunals, which have the right and the duty to examine them both as to the form and as to the merits. Of course, such a rule does not obtain between this country and Great Britain, and is only referred to as showing the measure of judicial caution exercised in respect to assumptions of conclusiveness and regularity when foreign and alien situations are presented. So it is seen that foreign judgments are received and enforced with caution. And it is a vast step from a judgment of a court of general jurisdiction, founded upon notice to the adverse party and actual trial, which is to be received with caution and upon certain proofs, to the binding force of proceedings of private foreign corporations or corporate companies. The contractual liability of stockholders under an English corporation or company like that in question is not like the contractual liability existing under the constitutions and statutes of our sister states, like that of Kansas or Ohio or Minnesota, which we are so frequently called upon to consider, for the reason that under these constitutions and statutes the liability of the stockholder resides in the express provision of the constitution or of the statute of the state, while the English statutes simply provide for the organization of the corporation or company, and authorize liability to be created by corporate or company action. In the first instance the liability results from the provisions of the constitution and the stat-

utes, while in the second instance the liability, if it exists, is created by the acts of the parties, and under such circumstances enforceable liability can only be created by lawful and regular corporate and statutory proceedings, which must be shown, and ought not, and cannot with any measure of safety, be presumed. When called upon to enforce against stockholders the Kansas constitutional and statutory contract the right of enforcement depends upon the judgment against the corporation, and enforcement proceeds upon the idea that all of the stockholders have been concluded by the judgment based upon service upon the corporation. Under statutes like that of Ohio, we hold that enforcement by a federal court of the constitutional liability created by a sister state is conditioned upon a joinder of all the stockholders and the corporation, and proof that the contemplated statutory ascertainments have been made; and, under statutes like that of Minnesota, enforcement is upon condition that the statutory and equitable requirements have all been complied with. And there is, as it seems to me, and as has been observed, a wide difference between an express constitutional or statutory provision which creates a liability from the stockholder to the creditor, and a permissive business arrangement under the statutes of Great Britain, where the liability is to be created by corporate vote or regulation.

The acts referred to in the record are various acts of Victoria, and among them is an act for the incorporation, regulation, and winding up of trading companies and other associations, with amendments; another, an act to amend the companies' acts; others, in respect to banking associations. But the plaintiff company was organized under the companies' acts. These acts provide that certain persons may associate themselves together for a lawful purpose; that the liability of the members may be limited to the amount unpaid on the shares, or to such amount as the members may respectively undertake, by the memorandum of association, to contribute to the assets of the company in the event of its being wound up; and. in case the company is formed on the principle of having the liability of its members limited to the amount unpaid on the shares, that various things shall be done and registered, and among other things to be stated and registered is the object for which the proposed company is established. It also provides that certain modifications of the conditions may subsequently be made. It provides that the articles of association shall be printed, and, when certain other things shall be done, that the articles shall be registered, and that when these statutorily required things are done the articles shall be binding upon each member of the company, and that all moneys payable by members shall be deemed a debt due from such member to the company, and in England and Ireland to be in the nature of a specialty debt. It provides for passing special resolutions by a majority of not less than three-fourths of the members, under certain and various conditions. The memorandum of association in question describes the purposes of the enterprise and various other things, and in an amended article it is provided that the directors may from time to time make such call as they may think fit upon the members in respect of all moneys unpaid on their shares.

But it is understood from paragraph 10 of the amended articles that the calls are to be authorized by resolutions of the directors or of the association. The articles also provide that the number of directors shall not be less than 3 nor more than 10; that each director shall own 50 shares, at least, in the company; and that the office shall be vacant if he ceases to own in his own right at least 50 shares, or if he hold any other office or place of profit under the company, or if he be absent from the meeting as provided under the articles, or if he be adjudged bankrupt, or if he suffers his estate to be vested in 'any person for the benefit of his creditors or compounds with his creditors or suspends payment, or if he is individually concerned in or participates in the profits of the company, or if he participates in the profits of any work done by the company. It is also provided by the articles of association that the directors shall cause minutes of various things to be made in books provided for the purpose, and, among other things, of all orders made by the directors and committees of directors, and of all resolutions and proceedings of meetings of the company. And, by the express terms of the defendant's certificate of stock, the holder's rights are made subject to the articles of association and the rules and regulations of the company.

The pleadings in this case, among other things, put in issue the question whether the corporation was ever duly organized,—whether all the shares necessary to enable the corporation to be duly and regularly organized have been subscribed to; and, among other things, the defendant in its pleadings set out that "the assessments attempted to be collected in this suit are invalid, unlawful, and unauthorized." It appears from the record that the plaintiff introduced no evidence whatever that the plaintiff corporation was insolvent at the time of making the calls or assessments sued for, or at the time of the bringing of this suit, or that the call or assessment was made for the benefit of its creditors or in payment of its debts. The fifth assignment of error, under paragraph 4, is upon the ground that the declaration contains no averment or allegation that the call or assessment was necessary to pay the debts of the company, or was made for the benefit of its creditors, and that it contains no averment or allegation upon what condition the plaintiff was authorized to make such calls or assessments, and to collect the same. So it appears that there was no allegation as to the financial condition or financial necessities of the corporation, and no evidence of its insolvency, or of the necessity for a call for actual business purposes, and that there was no evidence that the various conditions and restrictions contained in the various statutes and in the various articles of association had been complied with, and that there was no allegation or proof whether the company was engaged in business or had ceased to do business, or that the call was made upon all the members of the company alike.

The fifth general assignment of error is that the court erred in denying the motion of the defendant to direct a verdict for the defendant on the pleadings and evidence in the case. The nineteenth assignment goes to error in directing a verdict for the plaintiff. Va-

rious grounds are stated, and, among others, that in assignment 28, which goes upon the ground that there was no evidence in the case that this suit was instituted and carried on for the benefit of the creditors of the plaintiff, or that this call or assessment was made for the payment of debts or other obligations of the plaintiff; and, under assignment 29, that, in the absence of express promise to pay on the part of the defendant, the action cannot be maintained, unless to enforce the collection of the sum due for the benefit of the creditors of the plaintiff corporation, or in payment of its debts. It is true, the particular question as to the difference in the rule as to measure of proof applied to domestic corporations and that to be applied to foreign or alien corporations was not expressly called to the attention of the court below. But it seems to me, although the question of distinction between foreign and domestic corporations was not expressly urged in extenso to that court, that it was sufficiently covered by the brief statement, the motion for a verdict for the defendant, and the grounds stated in support thereof, and the exceptions to the order directing a verdict for the plaintiff, and the grounds there stated, and that the assignments of error entitle counsel to urge it here for our consideration, and that we ought, therefore, to deal with it.

Assignment twenty-nine is upon the distinct ground that there was no evidence that this suit was instituted and carried on for the benefit of creditors, or that the call or assessment was made for the payment of debts or other obligations of the plaintiff. The exception on which this assignment is based, under a familiar rule, called for all the evidence on that point, yet the record does not disclose any evidence whatever on the subject. While this assignment expressly raises a particular question, by fair and reasonable inference it also raises the question whether the corporation is a going corporation or is winding up, and, if winding up, whether the money was needed to pay legitimate debts of the corporation, whether there were any debts, or whether the money was going into the pockets of whoever succeeded in recovering upon the naked assessment. Aside from intendment and assumption, there is nothing tending to establish which way it is. There was no evidence that the corporation was out of business, or that it was doing business.

Under our own system of territorial and state divisions, there is no imperative and absolute rule of right among the states, aside from that involved in the provision of the constitution of the United States as to judgments of sister states, by which actions at law are maintained extraterritorially to enforce rights involved in corporate or other conditions existing in jurisdictions foreign to the forum where aid is sought. Such aid is, however, usually rendered on grounds of public policy, comity, and justice, and so, in respect to international conditions involving alien corporations, enforcement does not exist as a matter of right, but on the ground of wholesome international comity.

It is claimed by this company that the right of recovery does not stand here like that of a right involved in a judgment; that is to say, a judgment concludes because the defendant has been notified

and his rights adjudicated, while in this case it is insisted that the right rests in contract, and that the stockholder is concluded by corporate or directorship action, upon the ground of representation,—upon the ground that his rights were represented by the corporation, and that the directors and other members with whom he was associated were his agents for such purpose. I recognize this distinction between contracts and judgments, but, upon rules of analogy, I say, if the plaintiff, in order to secure an enforcement of his judgment under alien conditions, must prove the solemn laws of an alien country, and show due allegations and proofs, and due proceedings in the usual course of civilized jurisprudence, and formal records of courts of foreign countries of general jurisdiction, and that the merits of the judgment controversy were not extrajudicial, that there are far weightier reasons for requiring the same measure of proof and security in respect to the corporate management of the affairs of alien corporations and their proceedings; in other words, as a condition of enforcement, an alien corporation may be required to make full proof of the regularity of its proceedings according to the domiciliary law; that its calls were in the regular course of its business, and that the money called for was for the purpose of carrying on the business contemplated by the articles of association, or necessary to pay the debts of the association, if the corporation was insolvent and not going; that the calls were duly made upon all the stockholders alike, with no discrimination in favor of domiciliary stockholders or against foreign stockholders; and that the necessity existed in respect to business done within the scope of the contemplated purposes of the association. It is true the limitations upon the doctrine of corporate representation of stockholder interests as applied to distant alien countries have never been defined or much discussed, so far as can be learned; but I think, under alien conditions, even if the relations are that of principal and agent, or if the parties were associated together for a general purpose, and if the doctrine of representation applies, that it is not unreasonable, in a case of this kind, where relief is sought in a country foreign to the corporation, to require the plaintiff suitor to show that the corporate agent acted altogether within the scope of the authority. I do not view this case as one presenting the purchase of a certain number of shares of a certain par value, but as one presenting a subscription to shares upon which calls or assessments may be made as necessities occur; and as the shares are expressly subject to the articles of association and to the rules and regulations of the company, and by implication to the law of the domicile, it is not unreasonable to require the corporation to show that its assessments, its necessities and proceedings, are altogether within such scope. On the contrary, it is quite reasonable, and justice and safety require, that the party seeking enforcement shall show that all the conditions contemplated by the domiciliary law and the articles of association have been complied with.

I do not think comity or justice require that we should accord to corporate proceedings of a foreign and alien corporation the presumption of regularity which exists in respect to domestic corporations, or that the doctrine as to the representative character of the

corporation should, without limit, be extended to distant alien corporate action of business companies formed under general statutory laws of foreign countries, and that foreign corporate action should be accepted as conclusive of the rights of the parties. The power of the corporation to represent the stockholder depends upon the scope of the agency, and the scope of the agency depends upon the statute, the articles of association, and the character of the business; and the fact that proper corporate and statutory conditions exist should be shown by the plaintiff. While certain assumptions may be safely made with respect to domestic corporations, and while certain conclusions may be safely drawn from domestic representative situations, and certain presumptions safely accorded in respect to domestic corporate regularity and necessity, under circumstances such as involved in this case no principle of international comity is violated by requiring the contractual corporate and statutory facts to be shown by the foreign suitor seeking aid in a country alien to the domicile of the corporation.

It is the policy of the law in some cases to place the burden of proof upon a party when the facts are peculiarly within his knowledge, and not within the knowledge of the other party. 1 Greenl. Ev. § 79; Id. §§ 32, 34, 79. Rules as to burden of proof and as to presumptions are rules of convenience based on expediency, and adopted from motives of public policy. Questions as to such rules do not involve matter of substantive right, but relate rather and only to conduct of trials, rules of evidence, and the measure of proof to be required.

Under alien corporate and statutory conditions such as here presented, considerations of convenience, expediency, and public policy require that the foreign suitor's case shall not be made out by presumption or intendment, or by operation of technical domiciliary rules as to burden of proof, yet, doubtless, where representative capacity is created and is shown to continue, right of enforcement would not be affected by alien conditions, and doubtless the subscription creates the representative relation; but under alien conditions, as already said, assumption and intendment should not be invoked to establish the fact that the relation continues,—in other words, that the proceedings, business, and conditions of the corporation continue to be such as to entitle it to bind the stockholder upon grounds of representation,—and a foreign corporation relying upon the alleged or supposed representative capacity may and should be required to show that it has proceeded within the scope of the authority, and within the contemplated agency. Moreover, as has been said, the English statute does not create the right; it simply permits an association to organize for a purpose; and a corporation which undertakes to enforce the supposed right in a foreign country should be required to make full proof that the right is founded upon the contemplated authorized conditions,—upon regularity of nondiscriminating proceedings, and the necessities of the business. It does not follow, because upon proper pleadings between resident suitors the burden of showing the absence of these things may be placed upon the defendant, that a foreign plaintiff, who asks that a supposed foreign

right shall be enforced in a country alien to the right, should not be required to make full proof in respect to regularity of proceedings and the necessities for a corporate call. It has been recently held here, as has been said, that a stockholder liability created by an express constitutional provision of a sister state will not be enforced against the stockholder unless it affirmatively appears that all things which the statute contemplated should be done have been done. Equitable and legal considerations require that a foreign corporation shall make the same full showing. This is no special hardship upon the alien plaintiff, and it affords only a reasonable measure of security to a defendant stockholder foreign to the domicile of the corporation. If the attorney of an English corporation may make out his case by producing the statutes and the articles of association, and a piece of paper with six lines showing an assessment call, without being required to show regularity of proceedings, or that the assessment call was uniform and in respect to transactions not ultra vires, or that the money was needed to carry on the going business, or to pay the debts of a business that is being closed out, such assessment calls must become the foundation for enforcement, if they come from corporations operating under English statutes in the remote colonies of the British empire, or from France or Italy, the late republic of South Africa, or from Kamchatka or Japan.

Of course, this view is quite aside from intendment made in favor of domestic corporations like that suggested in Webster v. Upton, 91 U. S. 65, 23 L. Ed. 384; Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523; Telegraph Co. v. Purdy, 162 U. S. 329, 336, 16 Sup. Ct. 810, 40 L. Ed. 986. Such cases go upon the idea that the contract is to pay the full par value of the authorized stock when required and when called, and certain intendments as to corporate conditions are made on the ground that the call concludes certain questions. Such intendments or presumptions are based upon matters of domestic concern, and result from domestic conditions and peculiar interstate relations and necessities; but it must be said that these cases contain no hint or suggestion that presumption or intendment of due regularity or that the idea of conclusiveness should be extended to foreign private corporate or company action. Under our peculiar conditions of territorial divisions, and our peculiar quasi interstate judicial system, certain intendments and presumptions as to corporate existence and corporate regularity may not stop at state lines; but should such presumptions and intendments as to corporate conditions extend beyond national lines or the lines of realms, and to private corporations organized under foreign statutory laws, and doing business in distant and alien countries? I do not think international comity, public policy, or justice requires us to make such intendments or presumptions in favor of an alien corporation. And my contention in this respect is rested upon the ground that the same intendments and presumptions should not be accorded to corporations of distant alien countries that are accorded to corporate institutions of our own creation, which are directly responsible to the local domestic legislatures creating them, and subject to the restraints of the domiciliary courts.

The record in this case does not even show the statutorily con-

templated and intended resolution of the company or of the directors as the foundation for the call, or any special resolution conforming to the provisions of the statute. So far as this record shows, there are many provisions of the statutes and of the regulations of the company which may not have been complied with; and, indeed, while a call must be for the bona fide purpose of raising money for corporate purposes, and while it must be impartial and uniform among all the subscribers or shareholders, and made on all alike (Cook, Stock & S. §§ 113, 114), aside from presumption and intendment, for aught that appears in the record this company may be out of business, the money may be intended for ultra vires purposes, and this assessment call may be upon this defendant only, or, at most, upon the nonresident stockholders only, of all the shareholders. Thus the plaintiff presents a naked assessment call of a private corporation of a foreign and alien country, without proof of necessity or of intra vires purposes, or that all of the shareholders have either paid, or been called upon to pay. While the shareholder liability in this company is not upon express condition that the shareholders shall bear the company burdens equally, or that these things shall be made to appear, it is expressly subject to the regulations of the company, and, by force of operative construction, to the law of the foreign land. And a court called upon to enforce the supposed right against its own citizens may well require, as a condition upon which the supposed alien right founded in foreign statutory and corporate conditions will be enforced, that conditions shall be shown to exist which justify and make the call necessary; that there is no discrimination in favor of the shareholders of the domicile of the corporation, or against those foreign to the domicile; that the intended use of the money called for is within the general scope of the business originally contemplated or subsequently legally authorized, or to pay debts accruing in respect to the authorized business of the association; and that the corporate proceedings are regular and in accordance with all the regulations and by-laws of the corporation, and all the provisions of the foreign statutes, and all the requirements of the foreign common law. It is not unreasonable to require a foreign suitor who seeks enforcement of a foreign right to show that his right is fully and fairly within the purview of the foreign law, and within the scope and the necessities of the foreign enterprise. Such a rule would not impose so great a hardship upon the foreign corporate suitor who seeks the relief, and who has all the records and all the necessary evidence at hand, as we should impose upon our own citizens by subjecting them to recovery upon the naked proof of an assessment call by a private foreign corporation, or, as the only alternative, compel them to go to a foreign country and show that the corporation was not within the law, that the proceedings were not regular, and that the business and the assessment purposes were ultra vires.

At the arguments we called the attention of counsel directly to the question whether, under the jurisprudence of England, conclusiveness is accorded to corporate action involving internal management of corporations created by and doing business in countries foreign to England. No satisfactory answer was given in the subsequent brief

on this point, and I should doubt whether English courts would enforce stockholder liability upon the naked evidence of a single assessment call certified by the secretary of a private business corporation organized under our statutes, and operating either in our new and distant possessions or in our important business centers. Some English authorities were cited, based upon cases arising from the colonies of Great Britain, but none as to judicial treatment of American private corporation assessment calls in the courts of England.

I do not feel called upon to enter upon a discussion of the English cases, or to inquire whether this action, with the measure of proofs here presented, is sufficiently within the English authorities to be maintained there, for the reason that the rule of evidence and the measure of proof required in the domestic forum may not be a just rule of evidence or a sufficient measure of proof in the courts of an alien country where enforcement of such right is sought. But, without venturing upon a critical analysis of the English cases, it may be observed that it is at least extremely doubtful whether the English courts would consider the proofs here presented sufficient to establish the right of recovery in the domiciliary courts in a case like this. In some of the English cases based upon some of the statutes of Great Britain, it is held that organization and subscription of the full stock must be shown; in others, that the assessment was upon all the shareholders alike; in others, that under certain circumstances the liability on the shares does not constitute a debt; in another, under the Swansea dock act, where the place of business was Swansea, and 14 days' notice of all public meetings was required by the statute to be given by advertisement in a paper circulating in the district of the company's principal place of business, notice was published in a Sunday London paper, and, at a meeting held in pursuance of the notice, change was made in the number of directors, it was held to be invalid and illegal, because it did not appear that the paper reached Swansea; in others, that there must be properly appointed directors to make a call; in others, that the form of remedy must be strictly followed (and English authorities would seem to indicate, where no particular form was prescribed, that the remedy, as well as the question whether such courts would require evidence as to the internal management of the corporation, might depend upon the question whether the concern was a going concern, or in process of winding up); in other cases, that it must be made to appear that the requisite number of directors acted; in others, under certain circumstances, that it must be made to appear that there are debts of the company unpaid. I do not refer to these cases as having any decisive bearing upon any particular point before us, but merely as illustrating that in England, under certain circumstances, something more than organization, holding, and assessment is required to be shown.

It is now a matter of common notoriety that the evils resulting from loose and unauthorized conduct and management under these English companies' acts are a matter of severe popular, parliamentary, and judicial criticism in England, and that in 1894 a committee was created by a London board of trade which was presided over by Lord Davey. This committee, in its report, pointed out many of the

evils incident to the system; and some of the principal evils were said to result from directors acting without qualification, or taking gifts of paid-up shares; from companies proceeding to allotment upon insufficient capital; from loading of the purchase money in case of a company formed to purchase an existing business, or of the contract price in case of a company formed to construct and work an undertaking: from the nondisclosure in the prospectus of facts material for the guidance of intending investors, and want of facilities on the part of the public for ascertaining the existence of mortgages and charges affecting the company's property. This committee reported an act intended to remedy notable and notorious evils, which became a law in 1900 (Wkly. Notes, Aug. 1900, pp. 188, 189; 38 L. R. p. 96; St. 63 & 64 Vict.); and in it, among other things, the idea of conclusiveness is dealt with, and conclusiveness is only expressly carried to the certificate of incorporation, and to registration and matters precedent and incidental thereto; thus, by implication at least, presupposing a limitation upon the uncertain and unsafe doctrine of presumption and conclusiveness, if the doctrine may be said to exist, in respect to regularity of corporate and company proceedings subsequent to incorporation and registration. I do not refer to recent English parliamentary criticism as having a decisive or even a direct bearing upon the question at issue, but to illustrate the point taken, that we cannot with safety blindly accept as conclusive detached extracts from such business associations. It was held by Mr. Justice Kekewich, in Re National Debenture & Assets Corp. [1891] 2 Ch. Div. 505, that the certificate of incorporation could not be treated as conclusive of the fact that the statutory seven persons had signed the memorandum of association; and the court of appeal expressly agreed with Mr. Justice Kekewich's view of the law; Lord Justice Lindley stating that it was a condition precedent to registration under the act that the company should consist of seven members. Reasoning from such English requirements, it may at least be required here, as a condition of enforcement in this forum, that the plaintiff shall not only show a legal statutory organization, but that the proceedings have been regularly within the English statutes and the by-laws of the company. and, in short, that the status of the corporation and its proceedings are in all respects within the law of England. Bailey v. Birkenhead, 12 Beav. 433, 440, which the plaintiff cites in support of his position as to the reluctance of the English courts to inquire into the internal affairs of corporations, was the case of a going corporation, and was a bill in equity without a proper joinder of the different classes of shareholders. Still, because the English courts do not inquire into the internal affairs of going domestic corporations in a suit in favor of a stockholder, it does not follow that courts of a country alien to the corporation should be estopped from requiring proof upon the question whether the corporation is going or not, and, if not going, require evidence as to the corporate necessities. However it may have been before, since the decision of the supreme court in Bank v. Hawkins, 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007, a banking corporation is not estopped from setting up in avoidance of an assessment that its holdings are

ultra vires. If this may be done by a corporation in its own behalf, I see no reason why the stockholder may not set it up as against the corporation, especially in respect to matters of which he had no notice. If this may become a defense between domestic shareholders or corporate suitors; and if a foreign plaintiff may be required to make it appear that his foreign judgment of a court of general jurisdiction is founded upon due allegations and proofs, that its recovery was in accordance with the usual course of jurisprudence of a civilized country, and that the merits of the case were not extrajudicial, I see no reason why enforcement of a private foreign corporate assessment call against a citizen shareholder of this country by the courts of this country may not, without offending the principles of international comity, be made subject to the qualification that corporate regularity and full intra vires conditions shall be shown by the foreign suitor invoking the aid.

This is, as claimed, a contract, but it is not a simple contract like that of a contract of sale, or like that involved in a negotiable promissory note. On the contrary, it is a contract involving foreign corporate conditions and foreign statutory requirements; and, enforcement being sought extra regnum, on the grounds of comity, regularity of corporate proceedings and performance of statutory requirements by the party who sets up the contract should not be presumed, but should be shown by the party seeking its enforcement. The general rule of comity as to enforcement of the personal liability of a resident stockholder of a foreign corporation is that, if it rests in contract merely, it will be enforced according to the law of the place of the contract, and, if it grows out of a statute to which the corporation belongs, that it will generally be conceded and enforced, if the liability is in its nature contractual; but this is wholly upon grounds of comity, and may be altogether excluded, or enforced in a foreign country upon such terms and conditions as that country may think proper to impose. And this qualification is true even in respect to our sisterhood of states. Paul v. Virginia, 8 Wall. 168, 181, 19 L. Ed. 357; Pembina Con. Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650; Boston Inv. Co. v. City of Boston, 158 Mass. 461, 33 N. E. 580; Fawcett v. Iron Hall, 64 Conn. 170, 29 Atl. 614; Pennsylvania Co. v. Bauerle, 143 Ill. 459, 33 N. E. 166; People v. Pavey, 151 Ill. 101, 37 N. E. 691; Insurance Co. v. Davis, 29 Mich. 238; Telegraph Co. v. Mayer, 28 Ohio St. 521; State v. Ackerman (Ohio) 37 N. E. 828. Therefore it is no answer to my position as to the measure of proof to be required to say that holding the stock creates a contract. I concede that it is in the nature of a contract. But saying that this is a contract is no greater answer than saying, in case of a foreign judgment, that the plaintiff's right of recovery is founded on a judgment of a court of general jurisdiction, and the enforcement of such a foreign and alien right is safeguarded by requiring a judgment plaintiff to show something more than the naked judgment. And so the enforcement of a supposed foreign corporate contract right may and should be safeguarded by requiring something more than the naked holding and assessment. While, under the federal constitution, judgments of our

sister states are entitled to full credit, and, duly authenticated, prove themselves by their own weight, and create an enforceable liability, judgments of alien countries, duly authenticated, do not prove themselves by their own weight and establish an absolute and enforceable liability, but require extrinsic explanation and support to that end. And, by parity of reasoning, and by force of close and almost controlling analogy, while assessments by domestic corporations under certain exceptional circumstances, and upon somewhat exceptional grounds, create an enforceable liability, assessments by foreign and alien corporations do not necessarily, by force of an absolute and arbitrary rule, create enforceable liability, without extrinsic explanation and support. The proceedings of a private foreign corporation, without the semblance of a seal, or even with a seal, must stand upon less favorable ground, extra regnum, both as to measure and burden of proof and as to conclusiveness, than the solemn and formal judgments of courts of general jurisdiction of foreign and alien countries. And questions as to the regularity and necessity of corporate assessments, and other material questions as to corporate proceedings, must stand less favorably as to presumption and intendment than the question of the authenticity of the solemn published statutes of Great Britain. So, in this sense, private foreign corporate assessment proceedings and the transactions involved in the anterior corporate proceedings do not possess any peculiar measure of merit, sanctity, or solemnity, as evidence, above that possessed by the judgments of foreign courts of general jurisdiction; and there is no peculiar rule of conclusiveness applicable to private foreign corporate assessment rights not applicable to foreign judgment rights. Indeed, judgment rights are recognized as in the class of the highest and most solemn of rights, and, if proofs may be required as to the regularity of foreign judgments, we see no reason why this plaintiff, a foreign corporation, should not be put to full proof of corporate necessity, corporate regularity as to its proceedings, and to full proof as to the transactions being within the scope of the business originally contemplated by the association, or subsequently legally authorized. And my conclusion is that the ordinary rules applying to domestic corporations as to burden and measure of proof do not apply to an alien corporation of the character of the one in question, and that the rule to be applied to alien corporate contracts should require the plaintiff to show that all material statutory and corporate requirements have been complied with, and that the conditions contemplated by the statutes and the common law of the country of the corporation actually exist. It is also my conclusion that, under the rule as to the measure of proof which should be required in the courts of a country alien to the corporate domicile, the pleadings in this case, together with the motion for a verdict, and the statement of the grounds thereof appearing in the record, operated to put the plaintiff to a larger measure of proof than was produced in its behalf at the trial, and that the objections and the exceptions sufficiently present to us the question as to the measure of proof to be required in a case like this. This is not a denial of right; it is not a denial of remedy; it is only a denial of the right of relief until the foreign suitor asking relief

proves by evidence readily accessible to him, and not accessible to his adversary, that the right exists, and is founded in conditions which fairly and reasonably require its enforcement. When, however, a foreign plaintiff like the one in question presents a case with a measure of proof showing that justice and comity require its enforcement (and in this connection "comity" is used in a sense as broad as that of "justice"), the right should be established and enforced in accordance with the law of England, and the remedy, subject to certain limitations, should be that employed for such purpose in that country; and this is for the reason, as said in Railway Co. v. Gebhard, 109 U. S. 537, 3 Sup. Ct. 369, 27 L. Ed. 1024, that "a corporation must dwell in the place of its creation, and cannot migrate to another sovereignty, * * * and whatever control it is subject to at home must be recognized and submitted to by those who deal with it elsewhere." Such being the law, it follows that "every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government affecting the affairs and obligations of the corporation * * * as the known and established policy of that government authorizes."

Considerable was said upon argument against the remedy, but upon the question of the remedy, were the right established by proper proofs, I agree with my Brethren. The decisions are numerous and controlling that, if the statute creating the liability specifies a remedy, that remedy must be followed; but, if not specified, I think the right must be enforced according to the usual course of jurisprudence in the jurisdiction of the corporation. This has been repeatedly held in respect to assessment cases in our own country, and I see no reason why the same rule should not apply to English corporations, especially in view of the fact that the system of common-law and equity jurisprudence of England prevails in this country so far as the same is not repugnant to our institutions. In this view, the law of New Hampshire in respect to the sole remedy of forfeiture of shares should not apply. Of course, the right is measured by the English law, subject to the qualification in respect to the rule of evidence, the necessity and reasonableness of which I have undertaken to point out; and the rule for which I contend involves the idea that no intendment or presumption as to regularity of corporate proceedings should be accepted in favor of a foreign and alien corporation which sues here, and that we may and should adopt a different rule as to the burden of proof in respect to material questions involved in an alleged right of recovery than that adopted by the domiciliary courts; and when the right is established the remedy is according to the remedy usually employed for the enforcement of such a right in England, the home of the corporation.