## CAMPBELL v. AMERICAN ALKILI CO.

### (Circuit Court of Appeals, Third Circuit. September 15, 1903.)

### No. 2.

**1. CORPORATIONS—ASSESSMENTS ON STOCKHOLDERS—DATE OF CALL.**

A resolution was passed by the directors of a corporation that a call be made on the holders of partly paid stock on September 16th following, the same to be payable in installments at specified times thereafter. *Held*, that September 16th was the date of the call for the purpose of fixing the liability of stockholders.

**2. SAME—LIABILITY OF STOCKHOLDER—TRANSFER OF STOCK.**

Both at common law and under the statutes of New Jersey a stockholder in a corporation is liable for assessments on calls lawfully made after he has been accepted by the corporation as a stockholder, and while he stands registered as such on its books, and he is not released from such liability by a transfer of the stock after the call has been made, but before it becomes payable.

**3. SAME—NEW JERSEY STATUTE.**

Under the corporation law of New Jersey, which provides (Sess. Laws 1896, p. 283, § 18) that "every corporation shall have power to create two or more kinds of stock of such classes, with such restrictions or qualifications thereof as shall be stated or expressed in the certificate of incorporation," a provision of such certificate, also embodied in the certificates of shares of partially paid preferred stock of a corporation, that the holder of such shares of record on the books of the corporation at the time of the making of an assessment thereon, and he only, shall be liable for such assessment, is binding on such holder, and fixes his personal liability.

**4. SAME—REMEDY FOR COLLECTION OF ASSESSMENTS—RIGHT TO SUE AT LAW.**

A state statute giving corporations a lien on the shares of stockholders for assessments, and authorizing a forfeiture and sale of the stock in case of default, does not provide an exclusive remedy, but is cumulative, and the corporation may, at its election, maintain an action in assumpsit against the delinquent stockholder.

**5. SAME—ACTION TO RECOVER ASSESSMENT—DEFENSES.**

The validity of an order by the directors of a corporation making an assessment on stockholders cannot be collaterally attacked by a stockholder in an action against him to recover the assessment.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

F. B. Bracken and John G. Johnson, for plaintiff in error.

R. D. Brown, for defendant in error.

Before ACHESON, Circuit Judge, and BUFFINGTON and KIRKPATRICK, District Judges.

KIRKPATRICK, District Judge. The American Alkili Company, the plaintiff below, brought its action in assumpsit against William S. Campbell, the plaintiff in error herein, and alleged: That it was a corporation duly incorporated under the laws of the state of New Jersey on April 29, 1899, with an authorized capital of $30,000,000, of which $6,000,000 was preferred stock, consisting of 120,000 shares of the par value of $50 each, and on which preferred stock there had been paid to the company, by the original subscribers therefor, the sum of $10 each. That on the 12th day of September, 1901, at a meeting of the board of directors of said company, duly called and held, the following resolution was adopted:

"Resolved, for the purpose of providing funds for the completion of the present works, the building of additional works and providing working capital, that a call of ten dollars upon each share of the preferred stock of the company be made September 16, 1901, payable at the office of the company in four installments as follows: First installment, $2.50 per share, October 21, 1901; second installment of $2.50 per share, payable January 21, 1902; third installment of $2.50 per share, payable April 21, 1902; and fourth installment of $2.50 per share, payable July 21, 1902."

The first installment called for by the above resolution was, at a subsequent meeting of the board of directors, postponed until November 21, 1901, and that both the call made under the resolution of September 12, 1901, and the postponement of the time of payment of the first installment were ratified at a meeting of the stockholders of

¶ 4. See Corporations, vol. 12, Cent. Dig. § 390.

the company. That on September 16, 1901, the defendant below was the holder of 5,100 shares of the preferred stock of the plaintiff company, and that the same were duly registered and stood in his name upon its books; and that as such stockholder notice was given him of the passage of the resolution of September 12, 1901, above set out, and demand was made upon him for the sum due by him thereon.

We are of the opinion that this action is proper in form, and that the declaration sets out a good cause of action. Webster v. Upton, 91 U. S. 65, 23 L. Ed. 384; Nashua Savings Bank v. Anglo-American Land Mortgage & A. Co., 48 C. C. A. 15, 108 Fed. 764; Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818. The affidavit of defense admits that on the 12th day of September, 1901, the defendant was the owner of 5,100 shares of the preferred stock of the plaintiff corporation of the par value of $50 each, upon which there had been paid $10 each— 300 of said shares having been acquired by him by original subscription, and 4,800 by subsequent purchase; that he continued to be the holder of record of all of said shares until October 3, 1901, when he sold the said shares to one David S. Thomson, surrendered his certificates, and the said stock was transferred to said Thomson on the books of the company, and new certificates for said stock were issued to said Thomson by the company, and that thereby he became "relieved and discharged of and from all liability for any unpaid calls made on said shares of preferred stock prior to the date of said transfer, and for any calls which might be made or become due thereon after said date"; that by virtue of the statutes of New Jersey (which are set forth) and the principles of law established and followed by the courts of New Jersey, a transfer of stock, followed by registry of transfer and grant of new certificates, the subscriber and former owner of stock is relieved from unpaid and future calls thereon; that the call described in plaintiff's declaration was abrogated by the subsequent action of the directors September 25, 1901, and the stockholders on October 30, 1901, whereby it was illegally permitted to reduce the capital stock of the company by allowing shareholders paying the call to exchange five shares of part paid preferred stock for two shares of the same full paid. The affidavit also sets forth and offers to prove certain acts in the organization of the company and its subsequent workings, which make this call fraudulent.

The first question which presents itself is, what is the date of the call? A call is defined in Cook on Corporations, § 104, to be "an official declaration by the proper corporate authorities that the whole or a specified part of the subscription for stock is required to be paid." The resolution of September 12, 1901 (set out at length supra) provides for a call September 16, 1901. In it both the date of the call and the payments of the installments under it were fixed. It was the same as if the call had been determined and made of that date. The resolution was only giving notice of what could have been done without notice. That the resolution provides for the payment in installments is evidence of the fact that the call was made as of a date antecedent to that of the payment of the installments. There was but one debt created—that of $10 per share, and it was payable in four "installments," which the Century Dictionary defines to be "partial payments

on account of a debt due." To use the language of the learned judge in North American Company v. Bentley, 19 L. J. Q. B. N. S. 427, "We cannot help thinking that a call is made and a debt accrues in respect of it, although the time for payment may not have arrived." We are of the opinion that the resolution of September 12th establishes the date of the call as September 16, 1901. This being so, and the transfer of the stock to Thomson being made October 3, 1901, then did the call of September 16th impose any personal liability upon Campbell, the defendant below, the then owner and registered holder of the stock; and, if Campbell thereby became liable, was this liability affected by his subsequent transfer to Thomson, and the issue of a certificate to him by the company? In Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203, it was held that "the original holder of stock in a corporation is liable for unpaid installments of stock without an expressed promise to pay them." And in Webster v. Upton, 91 U. S. 65, 23 L. Ed. 384, this doctrine was approved, and the court went further, and said that "the transferee of stock is liable for calls made after he has been accepted by the company as a stockholder and his name registered on the stock books as a corporator." This liability exists so long as he occupies that position and relation, and applies to all calls made during that period. The same obligation to pay, we think, arises also from the terms of the New Jersey statute (Sess. Laws 1896, p. 284) section 22 of which provides as follows: "The directors of every corporation may from time to time make assessments upon the shares of stock subscribed for, not exceeding in the whole the par value thereof; and the sum so assessed shall be paid to the treasurer at such times and by such installments as the directors shall direct." And section 40 of the act makes the transfer books the test as to who are shareholders. Under these provisions there is an implied promise by the shareholder to pay the assessments, and beyond that is the equity to contribute to the capital stock as a trust fund for creditors. Section 21 of the act provides as follows: "Each stockholder shall be bound to pay on each share held by him the sum necessary to complete the amount of such share." The transferee is vested, by substitution, with the rights of the transferror to the stock, but assumes also corresponding obligations. Because the transferror ceases to have a voice in the management of the company, and has no longer any interest or ownership in the property, he is freed from further liability, and the transferee is substituted and subjected to future calls by the corporation for further aid to carry on its business and fulfill its corporate ends.

Campbell, the defendant below, being the registered holder of 5,100 shares of preferred stock on September 16, 1901, was liable, as such holder, for any unpaid and uncalled for subscription thereon; and when such call was made by resolution of September 12th as of September 16th, an obligation was then imposed on him to pay. Cook on Corporations, § 256; Webster v. Upton, 91 U. S. 65, 23 L. Ed. 384; Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818; Finn v. Brown, 142 U. S. 56, 12 Sup. Ct. 136, 35 L. Ed. 936. But the transferee of preferred stock duly registered on the books of the company was liable for after-assessments as provided in the certificates held by the defendant. "After payment of ten dollars per share on the preferred

stock the subscribers thereto shall not be liable for any balance of their subscription excepting upon such shares as shall stand of record on the books of the company in their name at the time when any subsequent assessments or calls are made, but the holder of such shares of record on the books of the company at that time and they only shall be liable for the same." Section 18 of the act (Sess. Laws 1896, p. 283) provides that "every corporation shall have power to create two or more kinds of stock of such classes, with such restrictions or qualifications thereof as shall be stated or expressed in the certificate of incorporation"; while section 8, subsec. 4 (Sess. Laws 1896, p. 280), enacts that "the certificate of incorporation shall provide a description of the different classes of stock, * * * with the terms on which preferred shares are created." Under these provisions the conditions referred to were properly embraced, and, as such, the defendant, by having the shares standing in his name when the assessment was made, obligated himself to pay the same. We are therefore of the opinion that the call of September 16, 1901, created a personal liability upon Campbell, the defendant below, the then registered holder of the stock, for its payment, and that this liability was one of which he could not rid himself by afterwards transferring his share. The transfer of the stock by Campbell to Thomson, and the issue by the company of a new certificate to Thomson, did not relieve Campbell from his liability for the call. That liability had accrued September 16th, when the call was made. It was complete and perfect, and the subsequent transfer on October 3d was merely an act of accommodation to enable the shareholder to sell and legally transfer his stock. There was no expressed purpose of the shareholder or the company to affect liabilities or rights then existing. It in no way inured to the benefit of the company, nor could it serve to relieve the defendant of his obligations to the company.

Can this liability to pay be enforced by an action at law? Doubtless it can, unless the company is deprived of it by the remedy of forfeiture provided by the statute. Where a right of action and a right of forfeiture exist, it is manifest that the company cannot resort to both; but where a personal liability is imposed on a delinquent shareholder, and the right to forfeit the share is also given, the law is clear that the latter right is cumulative, and not exclusive. Ashton v. Burbank, 2 Fed. Cas. 26, 2 Dill. 435. "A grant of the power to declare a forfeiture for nonpayment does not by implication deprive the corporation of an option of remedies." Cook on Corporations, § 124. It is put to its election, and may resort to either; not both. It will be noticed that the statute in this case is not mandatory, but permissive. The treasurer is not directed to sell, and can only do so when ordered by the board of directors, and then he shall sell at public sale. There is no obligation imposed on the directors to follow this remedy permitted by the statute. The language is (section 23): "If the owner of any share shall neglect to pay any sum assessed for thirty days after the time appointed for payment, the treasurer, when ordered by the board shall sell at public auction such number of shares of the delinquent owner as will pay all assessments due from him." The statute itself recognizes the pre-existing liability and delinquency of the shareholder.

The assessment was "due from him," and he was "delinquent." In the meanwhile a right of action had accrued to the company for the collection of the amount due, and this right could not have been intended to be taken away by a continuance of the default, but to have furnished additional optional remedy if the default continued for a specified time. Under the law, generally, a corporation has a right either to sell or forfeit. When, therefore, the New Jersey statute expressly conferred a right to forfeit, it only conferred a power expressly which had always existed impliedly without the statute. It is obvious, therefore, that the express grant of an implied power of forfeiture of stock should not be held to exclude the generally implied power to sue for unpaid assessments, for both the right to forfeit and the right to sue may impliedly exist concurrently at law.

Has the defendant, then, being liable for the assessment levied upon the stock of which he was a registered holder on the books of the company at the time of the call, shown any valid defense? We think not. Doubtless a stockholder has a right to defend and resist a fraudulent call, "but an order of assessment, whether made by the directors, as provided in the contract of subscription, or by the court, as the successor in this respect, was doubtless, unless directly attacked, conclusive evidence of the necessity for making such an assessment, and to that extent bound every stockholder." Great Western Tel. Co. v. Purdy, 162 U. S. 329, 16 Sup. Ct. 810, 40 L. Ed. 986. If, therefore, a stockholder desires to attack an assessment, he must do so directly, and not collaterally (Elizabethtown Gaslight Co. v. Green, 49 N. J. Eq. 329, 24 Atl. 560); otherwise it might happen that one stockholder might be released and another held, while the same legal liability attached to each.

On the whole case we are of the opinion that the defendant's liability attached September 16, 1901, the date of the call; that he was not relieved of his liability by the transfer of his stock October 3, 1901; and that to the action here properly brought he has no defense.

The judgment of the Circuit Court is affirmed.